**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW MEXICO**

In re:
PHYLLIS L. CROWDER,
Debtor.                                                    Case No. 11-96-10336 ML

## ORDER DENYING MOTION TO DISBURSE FUNDS
## HELD IN STATE COURT REGISTRY

The matter before the Court is a Motion to Disburse Funds Held in State Court Registry filed by the Debtor on June 24, 1997 (Motion to Disburse).[1] The Motion to Disburse requests an order directing the state court to disburse the proceeds of a condemnation proceeding 50 percent to the Debtor and 50 percent to Charles Crowder. Objections were filed by John L. Rust Co. (Rust), Herbert J. and Julia D. Louis, Catalina Development, Inc. (CDI), New Mexico Public Utility Commission, Paseo del Norte Limited Partnership, Checkpoint Limited Partnership, Santa Teresa Land Company, Santa Teresa Limited Partnership, Dona Ana County,[2] and Jesse and Peggy Whittenton

---

[1] Charles Crowder, the Debtor's former spouse, filed a chapter 11 bankruptcy on April 7, 1997. Charles Crowder filed a similar motion to disburse in his bankruptcy but withdrew the motion.

[2] At the hearing on the Motion to Disburse, the Debtor's attorney indicated that the dispute with Dona Ana County had been resolved, therefore, this Court will not address this objection.

1

(Whittentons),[3] (collectively, Objectors).

## BACKGROUND

The Debtor filed this chapter 11 on January 26, 1996.  One of the significant assets of the bankruptcy estate is approximately 110,000 acre feet of water rights declarations and 32 water wells in the Santa Teresa, N.M. area owned by the Debtor and Charles Crowder. On July 31, 1996, the Court entered an order modifying the automatic stay allowing the City of Sunland Park (City) to proceed with a condemnation action pending before the Third Judicial District Court for Dona Ana County, New Mexico styled, <u>City of Sunland Park, Petitioner, v. Charles L. Crowder, et al.</u>, CV-96-150.  The City condemned water rights of approximately 450 acre feet of water and one well site with utility easement. The City has paid into the state court registry the proceeds of the condemnation totaling $720,000.  In her Brief in Support of the Motion to Disburse (Brief), the Debtor reduced her disbursement request to up to one-half of the funds held by the state court, $360,000 plus accrued interest.  The Debtor asserts that, although all the funds are part of her bankruptcy estate, Charles Crowder has a potential claim to one-half of the amount.  The

---

[3] The Whittentons filed their objection only in the Charles Crowder bankruptcy. Although they did not file an objection in this bankruptcy, the Court will consider it, because the objection refers to both bankruptcies and Debtor's counsel was served.  Moreover, Debtor's counsel presented no evidence at the hearing on the Motion to Disburse indicating surprise or prejudice as a result of the lack of filing in this proceeding.  The Whittentons properly filed a brief in this bankruptcy, and the arguments contained therein were considered in this ruling.

2

Debtor further limits her Motion to Disburse to a request for only the amount of the funds necessary to pay the allowed administrative fees of her attorney, accountants and real estate appraiser.

The Objectors oppose the Motion to Disburse with four basic arguments. First, the funds in their entirety are assets of the Debtor's estate and no part of them should be disbursed to Charles Crowder.[4] Second, the Debtor has not filed a "budget" or has not demonstrated a "need" for the funds.[5] Third, the funds are needed by CDI to confirm its plan.[6] Fourth, CDI, Rust, and Whittentons hold transcripts of judgments against the Debtor and/or Charles Crowder, which attached to the water rights and therefore to the condemnation proceeds. In her Motion to Disburse and in the Brief, the Debtor claims that the water rights, and therefore, the condemnation proceeds are personal property belonging to she and Charles Crowder, and as such, the proceeds are not encumbered by the liens.[7]

---

[4] Debtor, in her Brief, withdraws the request to disburse half of the funds to Charles Crowder. Therefore, this objection is moot.

[5] Debtor, in her Brief, limited her Motion to Disburse to specific administrative expenses in her bankruptcy. Therefore, this objection is moot.

[6] CDI filed its Second Amended Plan and Disclosure Statement on August 6, 1997. The Disclosure Statement was approved by this Court on September 5, 1997 and a confirmation hearing is set for November 20, 1997. Since the plan has not yet been confirmed, CDI has no claim to the funds to implement its plan. The Court overrules this objection because it is without merit.

[7] See Marks v. City of Tucumcari, 93 N.M. 4, 6, 595 P.2d 1199 (1979) (holding that judgment liens do not attach to personal property).

3

CDI obtained a judgment against C.L. Crowder Investment Co. on January 26, 1996, the same day that the Debtor filed her bankruptcy. CDI filed a transcript of judgment on February 26, 1996 for $12,900,636 plus accrued interest from January 26, 1996. CDI also purchased a judgment against Charles Crowder from Sarah Patti Pyle in the amount of $1,064,205.04 plus costs and accrued interest from April 22, 1991. Rust filed a transcript of judgment on September 6, 1994, arising from a judgment against Charles Crowder d/b/a Crowder Land Co. in the amount of $1,126,546.75, plus accrued interest. The Whittentons filed a transcript of judgment on January 18, 1995, arising from a judgment against Charles Crowder and the Debtor in the amount of $256,330.17 plus interest.

At the hearing on the Motion to Disburse held on July 8, 1997, the parties agreed that the only issue before the Court was a legal one: whether the judgments held by CDI, Rust, and the Whittentons attached to the water rights, as real property, and thus to the condemnation proceeds. The Court continued the hearing until August 6, 1997, and the parties briefed the issue. For the reasons stated below, this Court denies the Motion to Disburse.

## **DISCUSSION**

The only issue before the Court is whether, under New Mexico law, the Crowders'

4

water rights condemned by the City are to be considered real property, and therefore, subject to the judgment liens.[8] The water rights in question were declared rights, but the water had not been put to any beneficial use by the Crowders nor otherwise been reduced to possession.

The right to appropriate water or "water right" is a unique form of property, which is governed by statute in New Mexico. See, e.g., NMSA § 72-1-2 (describing beneficial use as basis for water right); NMSA § 72-5-1 (describing permitting procedure for surface water); NMSA § 72-12-1 (defining underground water right as based on beneficial use); NMSA § 72-12-3 (describing permitting procedure for underground water).

In Murphy v. Kerr, the U.S. District Court in New Mexico outlined some basic tenets of New Mexico water law and defined water rights as real property:

> While the corpus of naturally running water belongs to the state in trust for the public, the law recognizes a property right in its flow and use, known as the usufructuary right or the water right. Wiel, in his work on Water Rights at page 304, vol 1, 3rd ed., gives two definitions of a water right, as follows: "*A water right of appropriation is real estate*, independent of the ditch for carrying the water, and independent of ownership or possession of any land and independent of place of use or mode of enjoyment, whereby the appropriator is granted by the government the exclusive use of the water anywhere so long as he applies it to any beneficial purpose, *and it is an incorporeal hereditament*, solely usufructuary, not conferring ownership in the corpus of the water or in the channel of the stream." A water right is a usufruct in a stream, consisting in the right to have the water flow

---

[8] Under New Mexico law, a transcript of judgment is a lien on the real estate of the judgment debtor from the date of its filing in the office of the county clerk of the county in which the real estate is located. NMSA § 39-1-6.

5

> so that some portion of it (which portion the law limits in various ways) may be reduced to possession and be made the private property of an individual.
> It is therefore the right to divert water from a natural stream by artificial means and apply the same to beneficial use.
> Such a right is real estate.

Murphy v. Kerr, 296 F. 536, 541 (D.N.M. 1923), aff'd, 5 F.2d 908 (8th Cir. 1925) (emphasis added) (citing, Wiel on Water Rights, Western States, vol. 1, Sec. 283, and cases cited note 11). See also Elephant Butte Irrigation District v. Regents, 115 N.M. 229, 238, 849 P.2d 372 (N.M. Ct. App. 1993) (holding that venue for suits involving water rights must be brought in a county through which the stream flows because water rights are real property); Posey v. Dove, 57 N.M. 200, 210, 257 P.2d 541 (N.M. 1953) (stating that a water right is held to be real property by most authorities) (citing, 2 Kinney on Irrigation and Water Rights (2nd Ed.) p. 1328 and New Mexico Products Co. v. New Mexico Power Co., 42 N.M. 311, 77 P.2d 634, 641 (N.M. 1937)); New Mexico Products, 42 N.M. at 321 (concluding that a water right is real property and that statute of limitations for land also applied to water rights).

The Debtor argues that the water rights at issue are personal property, and as such, are not subject to the judgment liens, citing Hagerman Irrigation Co. v. McMurry, 16 N.M. 172, 113 P. 823 (N.M. 1911). In that case, involving a dispute over rights to divert water from the Rio Hondo, the New Mexico Supreme Court stated:

6

> The assumption by the [defendant] that the title to real estate is involved is not well founded. While *water flowing* in a natural stream is not the subject of private ownership any more than the fish in it, yet, *when it is impounded and reduced to possession by artificial means, it becomes personal property*, as the fish do when caught, or, as the common, ownerless air does, when it is liquefied and held in a vessel. Water once reduced to possession and control may be the subject of purchase and sale, or of larceny; and it makes no difference in that respect, whether the *captured fluid* is held in a skin or cask, by an itinerant water-vendor, or in the pipes of a modern aqueduct company.

Id. 16 N.M. at 180 (emphasis added).

` The conclusion in Hagerman that water once reduced to possession is personal property has been eroded somewhat by State ex rel. State Game Comm'n v. Red River Valley Co., 51 N.M. 207, 223-229, 182 P.2d 421 (N.M. 1945). In that case, the New Mexico Supreme Court held that water reduced to possession in a reservoir was public property (not the private property of reservoir owner) until beneficially applied to the purposes for which its presence afforded a potential use. Not only before being stored, but also while impounded by the dam, they were public waters, and the impounder had no exclusive privilege in their use while they remained public. Moreover, the court in Red River found that Hagerman did not apply because there was no evidence that the water had been reduced to possession.

The general rule among western states is that the "appropriative right" is a right to use water; is a usufructuary right, and therefore, is considered to be real property. 2

7

Hutchins, **Water Rights Laws in the Nineteen Western States** at 152 (citing Posey v. Dove, 57 N.M. at 210).

Hutchins' treatise provides:

> . . . The appropriative right is a right of private property. It is subject to ownership, disposition, and litigation as in the case of other forms of private property. The appropriative right is valuable property. The general rule in the West is that the appropriative right is real property.

Id. at 443.

The Objectors argue that these water rights were appurtenant to the Crowders' land, and therefore, are real property. However, the Objectors did not present any evidence showing that these water rights were appurtenant to any real property. The Objectors did not present evidence that the water rights were used for irrigation purposes, nor was there any evidence presented that any commercial use of these water rights is indispensable to the continued enjoyment of the Crowders' land. See KRM, Inc. v. Caviness, 122 N.M. 389, 925 P.2d 9, 11-12 (N.M. Ct. App. 1996) (holding that underground water rights were not appurtenant to land absent allegations that water had been used for irrigation on land or that continued commercial use of water rights was indispensable to continued enjoyment of land so as to trigger exception to appropriation doctrine that water and land are independent property rights); see also Murphy, 296 F. 536, 541 (stating that water right is independent of ownership or possession of any land).

8

Given the facts in the instant case, and particularly in light of the fact that the water rights in question were never put to beneficial use or reduced to possession by the Debtor in any manner, it seems that the case law and treatises on water law support the finding that the water rights are real property.

## **CONCLUSION**

Because I have determined that the debtor's water rights are interests in real property, the proceeds of the condemnation are subject to valid judgment liens against the Debtor. Therefore, this Court denies the Motion to Disburse because the condemnation proceeds appear to be encumbered by one or more judgment liens. The Court, in the context of this Motion, cannot decide which liens encumber Debtor's interest in the proceeds because the issue is not properly before this Court. The issue must be adjudicated in an adversary proceeding to determine the validity, priority, or extent of liens under Fed. R. Bankr. P. 7001. All remaining arguments asserted in connection with the Motion to Disburse are properly brought in an adversary proceeding. These include whether any or all of the liens lie against the Debtor and whether any of the liens were improperly filed against water rights or are avoidable under provisions of the Bankruptcy Code.

9

It is hereby **ORDERED** that the **MOTION TO DISBURSE IS DENIED**.

_____
MARK B. MCFEELEY,
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date stamped above, I mailed a copy of this order to:

Mr. Daniel J. Behles
Attorney for the Debtor
PO Box 415
Albuquerque, NM 87103-0415

Ms. Linda S. Bloom
Attorney for Charles Crowder
PO Box 218
Albuquerque, NM 87103

U. S. Trustee
P.O. Box 608
Albuquerque, N.M. 87125

Mr. Ralph W. Steele
Attorney for Whittentons
2040 Fourth Street NW
Albuquerque, NM 87102

Mr. Robert J. Muehlenweg
Paige Leslie Baird
Attorneys for Rust
PO Box 25127
Albuquerque, NM 87125

Lee W. Huffman

10

Attorney for N.M. P.U.C.
224 E. Palace Ave.
Santa Fe, NM 87501

Donald M. Salazar
Attorney for Paseo del Norte Limited Partnership
123 E. Marcy, Suite 200
Santa Fe, NM 87504

Ms. P. Diane Webb
Attorney for Regency Savings Bank
PO Box 849
Albuquerque, NM 87103

Ms. Gail Gottlieb
Christopher Holland
Attorneys for Louis
PO Box 1945
Albuquerque, NM 87103-1945

Frank S. Ainsa, Jr.
Attorney for CDI
310 N. Mesa, Suite 800
El Paso, TX 79901

Thomas R. Figart
Attorney for Dona Ana County
180 W. Amador Ave.
Las Cruces, NM 88001

                                            Dinah N. Martinez,
                                            Secretary to Judge McFeeley