UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/18/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Phyllis L. Crowder

**Case Number:** 96-10336

## Document Information

**Description:** Memorandum Opinion re: [648-1] Amended Motion For Relief From Stay by Dona An County Treasurer. Granted relief from stay to allow DAC to prosecute a condemnation action in state court.

**Received on:** 1998-12-16 10:39:37.000

**Date Filed:** 1998-12-16 10:39:37.000

**Date Entered On Docket:** 1998-12-17 00:00:00.000

## Filer Information

**Submitted By:**

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

IN RE: PHYLLIS L. CROWDER,

      Debtor.                                   Case No. 11-96-10336 ML

## MEMORANDUM OPINION

THIS MATTER came before the Court on Dona Ana County's Motion for Relief from Stay to Prosecute Claim. Dona Ana County (DAC) filed an Amended Motion for Relief from Stay to Prosecute Claim, but has agreed that the Court only consider the relief requested in its original motion.

DAC requests relief from the automatic stay imposed by 11 U.S.C. §362 so it can prosecute an eminent domain proceeding in state court against the Debtor, the bankruptcy estate, and other parties with interests in the property sought to be condemned. Specifically, DAC seeks to condemn the following property which is now part of the bankruptcy estate:

    1. Well No. LRG 3130, now known as LRG 3150-S-4 according to the records of the State Engineer's Office, also known as Santa Teresa Well No. 5 ("Well No. 5");

    2. A fifty foot by fifty foot (50' x 50') tract of real property upon which Well No. 5 is located; and

    3. Two hundred (200) acre feet of perfected water rights associated with Well No. 5.

After having a hearing on the merits, reviewing the motions and responses submitted by the parties, and being otherwise fully informed, the Court grants the motion.

1

DISCUSSION

Relief from the automatic stay imposed by 11 U.S.C. §362 shall be granted for cause, or where the debtor has no equity in the property at issue and the property is not necessary to an effective reorganization. 11 U.S.C. §362(d)(1) and (2). Relief from the automatic stay to prosecute a condemnation action is somewhat unique in that the movant does not have a lien on certain of the debtor's property with insufficient equity to protect the movant's interests. *See Commonwealth of Mass. v. Bartlett,* 384 F.2d 819, 822 (1st Cir. 1967) (the state is not in the position of a creditor, but has a "special inchoate interest or right"). Instead, the movant is requesting relief from the automatic stay so it can exercise its sovereign power of eminent domain. Thus, 11 U.S.C. §362(d)(1), relief from the automatic stay for "cause," is applicable here.

The Bankruptcy Court has exclusive jurisdiction over the property of the estate, and therefore has the power to enjoin the continuation of condemnation proceedings. 28 U.S.C. §1334; *see In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co.,* 738 F.2d 209, 211 (7th Cir. 1984). The Court cannot, however, permanently prevent a state or municipality from exercising its powers of eminent domain. *See Commonwealth of Mass. v. Bartlett,* 384 F.2d 819, 822 (1st Cir. 1967) ("At most, [the Court] could order the state not to proceed. Moreover, the prohibition would be no more than a postponement . . . . there can be no prospective prevention.") Once a plan is confirmed, the property of the estate revests in the debtor, or is transferred to the reorganized debtor or to another party if sold or transferred, and is subject to condemnation by government action. 11 U.S.C. §1141(b) ("Except as otherwise provided . . . confirmation of plan vests all property of the estate in the debtor"); *see State of Maryland v. Amoruso (In re Quality*

2

*Supplier Gen. Partnership)*, 176 B.R. 135, 140 (Bankr. D.Md.1994) ("When a bankruptcy estate's property is revested in a debtor after confirmation of a reorganization plan, the debtor's property interests stand in the same relationship to the State's sovereign powers of eminent domain as they did before the bankruptcy. . . ")  The issue before the Court is whether to grant relief from the stay to allow DAC to prosecute its condemnation action at this stage of the bankruptcy proceeding, prior to plan confirmation.

In determining whether the automatic stay should be lifted for cause to allow litigation to continue (or commence) in another forum, the Bankruptcy Court in *In re Curtis* developed the following twelve factors:

> (1) Whether the relief will result in a partial or complete resolution of the issues. (2) The lack of any connection with or interference with the bankruptcy case. (3) Whether the foreign proceeding involves the debtor as a fiduciary. (4)Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). 10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties. (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. (12) The impact of the stay on the parties and the 'balance of hurt.' *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D.Utah 1984) (citations in original text omitted).

The Court finds that factors 1), 2), 7), 10) and 12) are relevant here.

<u>Complete Resolution of Issues:</u>

Granting relief from the stay would allow for a complete resolution of the issues. There may be questions concerning the DAC's powers of eminent domain, and whether DAC, or some

3

other municipality has authority to serve the area in question.[1] Those issues are best resolved in the state court condemnation action, and, in fact, were the Bankruptcy Court to have those issues brought before it, the Court might not have jurisdiction to hear them. 28 U.S.C. §1334(b) and 28 U.S.C. §157(c) (concerning the Bankruptcy Court's "related to" jurisdiction).

Lack of Interference with Bankruptcy Case:

A condemnation proceeding need not interfere with a bankruptcy case. Certainly the decisions made in a state court condemnation proceeding do not involve interpretation or application of sections of the Bankruptcy Code. The effect of a condemnation proceeding, on the other hand, will have some impact on the bankruptcy proceeding. The condemned property will no longer be part of the bankruptcy estate. In *In re F.A. Potts and Co, Inc.*, 49 B.R. 517 (Bankr. E.D.Pa. 1985), the Court had little trouble finding that the condemnation would not interfere with the bankruptcy proceeding because the debtor had no interest in retaining the subject property under its confirmed liquidating Chapter 11 Plan.

In this case, it is not clear whether a reorganization plan will be confirmed. To date, the Court has held confirmation hearings on three proposed plans; none was confirmed.[2] No party has yet filed another proposed plan. If no plan is confirmed, a condemnation action would not impermissibly interfere with the bankruptcy proceeding. The proceeds from the condemnation

---

[1] The City of Sunland Park has already been granted relief from the stay to institute condemnation proceedings against some of the Debtor's other assets. There is a dispute between The City of Sunland Park and DAC over which entity has the authority to provide sewer and water service to the unincorporated development area.

[2] The Court denied confirmation of Catalina Development Inc.'s Revised Second Amended Plan of Reorganization on March 4, 1998. The Court denied confirmation of the Debtor's Revised Second Plan of Reorganization and Catalina Development, Inc.'s Revised Corrected Third Plan of Reorganization on October 13, 1998.

4

action would be distributed to creditors as part of an orderly liquidation of the Debtor's bankruptcy estate. On the other hand, allowing the condemnation to proceed could interfere with the Debtor's prospects for an effective reorganization. The City of Sunland Park has already been granted leave from the automatic stay to pursue condemnation of other wells and water rights of the Debtor, and the Debtor's initial plan of reorganization depended upon the City of Sunland Park's participation in water services development in the area. Allowing DAC to prosecute its condemnation action, assuming the condemnation action is successful, will add another water services entity to the area, arguably making a successful reorganization more difficult.

No Prejudice to the Interests of Other Creditors[3]:

Under the takings clause of the New Mexico Constitution, the government is required to compensate property owners when it takes private property for public use. N.M. Const. art. II, §20. DAC will be required to pay reasonable compensation to the Debtor in order to acquire Well No. 5, the surrounding real property, and the perfected water rights. These funds will become part of the bankruptcy estate, and will be available for distribution to creditors should the estate be liquidated. 11 U.S.C. §541(a)(6). Likewise, the condemnation proceeds could be incorporated into an effective reorganization.

Judicial Economy:

The state court is the proper forum to hear the condemnation proceedings. The Bankruptcy Court cannot permanently enjoin DAC from exercising its powers of eminent domain. *See Commonwealth of Mass. v. Bartlett*, 384 F.2d 819, 822 (1st Cir. 1967). Cited with approval in

---

[3] No creditors have objected to DAC's motion for relief from the stay, which suggests that the creditors do not believe that DAC's condemnation proceeding will prejudice their interests.

*In re Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.,* 739 F.2d 1169, 1174 (7th Cir. 1984). Allowing DAC to prosecute its condemnation proceeding now instead of waiting until a plan is confirmed promotes judicial economy because the results of the condemnation proceeding can be incorporated into the completion of the bankruptcy proceeding, whether it is through the distribution of the proceeds from the condemnation action via liquidation of the Debtor's assets, or through an effective plan of reorganization.

Balancing of Harms:

Balancing of the interests of the Debtor against the interests of DAC is the most important factor for the Court to consider in determining whether to grant relief from the automatic stay. *See State of Maryland v. Amoruso (In re Quality Supplier Gen. Partnership),* 176 B.R. 135, 141 (Bankr. D.Md. 1994) (". . . a balancing of interests should be used to determine whether relief from the automatic stay should be granted.") Indeed, all of the factors already discussed ultimately hinge on a balancing of harms.

In weighing the interests of DAC against the interests of the Debtor, the Court finds the *Quality Supplier* case instructive. In *State of Maryland v. Amoruso* (*In re Quality Supplier General Partnership),* 176 B.R. 135 (Bankr. D.Md. 1994), the state requested relief from the automatic stay in order to institute condemnation proceedings to acquire real property to construct a medium security penal institution. The debtors were using the real property the state sought to condemn for manufacturing and repairing pallets. The state introduced evidence of a pressing need for additional prison beds. The state had also already awarded a contract for demolition of the building. The debtors, aware of the state's intentions to condemn its property, had been looking for a replacement facility with no success. The Court found that the debtors'

6

plans for relocation were "no more than guesses or hopes." *Id.* at 139. In deciding that the stay should be lifted to allow the state to prosecute condemnation proceedings, the Court found that the debtors were not entitled to use prospects of a successful plan of reorganization to bar the state permanently from exercising its sovereign power of eminent domain, that the debtors' interest in delaying the time to relocate were in conflict with the state's interest in condemning the property, and that such a direct conflict should be resolved in favor of the state. 176 B.R. at 142-143.

Applying the conclusions of the *Quality Supplier* case to the instant case, this Court finds that the Debtor's efforts at reorganization must yield to DAC's interest in condemning Well No. 5, the surrounding real property and the associated water rights. DAC introduced evidence of its long term regional water development and wastewater treatment plan to show its need for water and necessity for pursuing a condemnation action against the Debtor's assets. One reason DAC asserts it needs to pursue condemnation now is so that it can take advantage of favorable interest rates when it issues revenue bonds to fund its wastewater project. DAC represents that it has already received requests for water service in the area, and that it needs Well No. 5 and the associated water rights in order to develop water services to meet those needs. DAC has also entered into negotiations with the Environmental Protection Agency for a wastewater treatment facility.

The Debtor urges the Court to deny the motion because there is no evidence before the Court that parties who need water are not receiving it, that the Debtor is capable of providing all water services necessary, and that balancing the interests of the Debtor in completing an effective reorganization against DAC's interest in condemning the property weighs in favor of the Debtor.

7

Which entity ultimately provides water service to the area is not of concern to the this Court. The automatic stay has already been lifted to allow the City of Sunland Park to pursue condemnation of several of the Debtor's wells. The Debtor's proposed plan of reorganization (though not confirmed) depended on funds from the City of Sunland Park's condemnation action. The Debtor contends that allowing DAC to prosecute a condemnation action will only serve to interfere with the Debtor's attempts at reorganization.

But the Debtor's interest in an effective reorganization, though important, is not paramount. *Commonwealth of Mass. v. Bartlett,* 384 F.2d 819, 821-822. (1st Cir. 1967). Furthermore, other than the Debtor's contention that DAC's condemnation would interfere with the Debtor's prospects for an effective reorganization, the Debtor made no showing that an effective reorganization would be dependent on the Debtor's retention of Well No. 5 and the associated water rights. *See State of Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, 176 B.R. 135, 141 (Bankr. D.Md. 1994) (suggesting that the debtor bears the burden of showing that the property at issue is necessary for an effective reorganization, and stating that where property is not necessary to an effective reorganization, the state should be allowed to proceed with condemnation); *see also Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2nd Cir. 1990) (stating that the burden of proof in stay motions shifts to the debtor for all issues other than the debtor's equity in the property); *see also In re Curtis,* 40 B.R. 795, 802-803 (Bankr. D.Utah 1984) (after movant establishes case for relief from the automatic stay for "cause," burden shifts to the debtor to show that the stay should remain in place). Finally, where there is a conflict between the debtor's interest in an effective reorganization and the public interest served by the county's exercise of its

8

power of eminent domain, the Debtor must yield. *See State of Maryland v. Amoruso (In re Quality Supplier Gen. Partnership)*, 176 B.R. 135, 141 (Bankr. D.Md. 1994).

## CONCLUSION

This Court agrees with the *Quality Supplier* Court's recommendation that, "the bankruptcy court should assure itself that a debtor's efforts at reorganization are sufficient to satisfy the purposes of the Bankruptcy Code and that the state is allowed to proceed to the greatest extent possible without materially infringing upon such a reorganization." *Id.* at 141. Thus far in this bankruptcy proceeding the Debtor has made efforts to propose a plan of reorganization, but without success. Lifting the stay to allow DAC to pursue its condemnation action, though it will likely have some impact on the pending bankruptcy, will not prevent the Debtor from continuing its efforts at reorganization. Knowing the result of a condemnation proceeding could actually be helpful to the Debtor because it will free the debtor from the uncertainty of whether DAC will be successful in its action post confirmation; the Debtor will know whether she should incorporate use of Well No. 5 and the associated water rights into a plan of reorganization.

Therefore, for the foregoing reasons, the Court concludes that cause exists to grant relief from the automatic stay to allow DAC to prosecute a condemnation action in state court. This opinion constitutes the Court's finding of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An appropriate order will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

9

Case 96-10336-trc7    Doc 666    Filed 12/16/98    Entered 12/17/98 09:04:00    Page 10 of 11

I hereby certify that a true and correct copy of the foregoing was either electronically transmitted, faxed or mailed to the following parties on the date file stamped above.

Thomas R. Figart
Attorney at Law
180 W. Amador
Las Cruces, NM  88001

Daniel J. Behles
Attorney at Law
P.O. Box 415
Albuquerque, New Mexico 87103


Dinah N. Martinez
Secretary to Judge McFeeley
(505) 248-6526