UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: PHYLLIS CROWDER,    No. 7-96-10336 ML

Debtor.

### ORDER GRANTING MOTION TO APPROVE SETTLEMENT OF PASEO VILLAGE HOMEOWNERS ASSOCIATION CLAIM No. 184, SUBJECT TO CERTAIN CONDITIONS

THIS MATTER is before the Court on the Motion to Approve Settlement of Paseo Village Homeowners Association ("PVHA") Claim No. 184 ("Motion"). The Motion seeks to approve a settlement between the Chapter 7 Trustee and PVHA whereby the bankruptcy estate will pay PVHA $50,000.00 and convey by quitclaim deed to PVHA all of the estate's interest in the streets located within the Paseo Village subdivision of the Santa Teresa subdivision in exchange for the release of any existing or future claims of PVHA against the bankruptcy estate relating in any way to the streets, and the assumption by PVHA of all liability for maintaining and repairing the streets within the Paseo Village subdivision. Catalina Development, Inc. ("CDI"), Santa Teresa Country Club, LLC and Mesilla Bolson Properties, L.L.C. ("Mesilla Bolson") objected to the settlement, asserting, *inter alia,* the following: 1) that Claim No. 184 is a late-filed claim that should not be approved; 2) that PVHA should not be allowed to use the proceeds of the settlement to pursue claims against CDI; 3) that the settlement should not contain any language that appears to assign liability to CDI for street repair costs[1]; 4) that no payment to

---

[1] At the final hearing, counsel for the Trustee conceded that the settlement should not include a provision that assigns responsibility to CDI for the costs to repair certain of the streets. Because the Settlement Agreement which was approved by the board of directors of PVHA contained such a term, the Court will require the Trustee to obtain consent and approval from PVHA of an amended Settlement Agreement that removes those provisions.

1

PVHA should be made until there has been a resolution regarding the trustee's intent to abandon other streets owned by the bankruptcy estate, since other subdivisions may also have claims against the bankruptcy estate for street repairs; 5) that there is no such entity as PVHA, that the correct name is Santa Teresa Paseo Homeowners' Association; and 6) that the proposed settlement must be subject to CDI's right of access over all the streets in the Santa Teresa subdivision that are owned by the bankruptcy estate. The Court held a final hearing on the Motion on February 12, 2007, and took the matter under advisement.

## FACTS AND DISCUSSION

This voluntary Chapter 11 bankruptcy proceeding, filed January 26, 1996, was converted to a proceeding under Chapter 7 of the Bankruptcy Code on June 4, 1999. Bernard R. Given, II was elected as the permanent successor Chapter 7 Trustee of the bankruptcy estate in August of 1999. (*See* Docket # 841). The bankruptcy estate owns or controls certain streets in the Santa Teresa development, including certain residential streets located within the Paseo Village subdivision.

December 6, 1999 was the established deadline for filing proofs of claim. (*See* Docket # 888 - Notice of Possible Dividends, establishing 12/6/99 as the last day to file claims). PVHA filed its proof of claim (Claim No. 184) on July 21, 2005. It did not specify an amount. The Chapter 7 Trustee filed an Omnibus Objection to Remaining Disputed Claims ("Omnibus Claims Objection") on March 21, 2006. The claim of PVHA was one of the claims included in the Omnibus Claims Objection. PVHA responded to the Omnibus Claims Objection, and the Chapter 7 Trustee and PVHA reached a settlement which is the subject of this Motion.

In investigating the claim of PVHA, the Chapter 7 Trustee inspected the condition of the

2

streets in the Paseo Village subdivision and obtained estimates of the cost for repair. The Chapter 7 Trustee believed it was possible that the bankruptcy estate could be liable for $150,000.00 in repair costs, based on the estimates he received regarding repair costs, and based on his investigation as to whether the bankruptcy estate holds an ownership interest in the streets and consequent liability for their maintenance and repair. Some of the other subdivisions within the Santa Teresa subdivision have homeowners' associations. There is no comprehensive homeowners' association for the entire Santa Teresa subdivision. PVHA and Unit #4 Homeowners' Association are the only homeowners' associations to file proofs of claim.[2] The Chapter 7 Trustee has not filed a motion to abandon the bankruptcy estate's interest in the remaining streets in the Santa Teresa subdivision.

CDI owns property that it is developing called Franklin View Estates which is adjacent to the Paseo Village subdivision. CDI owns some of the main arterial streets in the area. However, thirteen lots located in the Franklin View Estates subdivision front a street located in the Paseo Village subdivision. To access CDI's property, CDI has used streets located in the Santa Teresa subdivision, including certain streets located in the Paseo Village subdivision.

There is some confusion over the responsibility for maintenance and repair of the streets in the Santa Teresa subdivision. In a letter to the Board of County Commissioners of Dona Ana County, dated May 12, 1976, an entity named Santa Teresa Developers guaranteed that "we will maintain the paved streets on the Santa Teresa Subdivision . . . at our own expense and at no expense or obligation to Dona Ana County, during the entire time that such streets remain the

---

[2] The Claim of Unit #4 Homeowners' Association was disallowed. *See* Order Disallowing Certain Claims, entered November 17, 2006 (Docket # 1612).

3

property of Santa Teresa Developers." *See* Exhibit A. Santa Teresa Developers is not the Debtor, though it likely was an entity controlled at one time by Charles Crowder, the Debtor's spouse. The Chapter 7 Trustee testified that the title work in the area is poor, and that he discovered no real record of who owns title to the streets in the Santa Teresa subdivision.

In August of 2005 a dispute arose over who would bear the costs to repair certain damages to Apache Gold Loop, a street located in the Paseo Village subdivision.[3] As a result, after a meeting among the Chapter 7 Trustee, Gregory W. Collins, Francis S. Ainsa, Jr., Don Milner (as representative of the PVHA), and representatives from Dona Ana County, the parties agreed to a sixty-day cooling off period. In addition, the Chapter 7 Trustee, Gregory Collins, and Francis Ainsa executed a Memorandum dated August 4, 2005 which was prepared by Mr. Ainsa. The Memorandum provided that the bankruptcy estate and CDI would jointly pay for the cost of repair to Apache Gold Loop and would negotiate in good faith over the next sixty days to reach an agreement regarding the allocation of the total repair costs. (*See* Exh C ). The Memorandum further provided Gregory Collins (including CDI and other entities controlled by Mr. Collins) "a right of access for all purposes over all the private streets in Santa Teresa that are owned by the Phyllis L. Crowder Bankruptcy Estate." *Id.* Approximately one year later, Mr. Collins re-signed the Memorandum before a notary public for the purpose of recording the Memorandum in the real property records of Dona Ana County.

The repairs contemplated by the Memorandum have been completed, but certain of the roads within the Paseo Village subdivision remain in need of repair. PVHA has indicated it

---

[3]Certain of the damages to Apache Gold Loop may have been caused by El Paso Electric Co., but El Paso Electric Co. has denied any claim for damage. *See* Exhibits T-6 and T-8.

believes CDI is responsible for certain maintenance and repair costs for the roads in the Paseo Village subdivision, and may seek to assert a claim for damages against CDI.

In that regard, Paragraph 2. Of the Settlement Agreement provides:

> PVHOA agrees that the $50,000.00 shall be dedicated to road repair and maintenance of the streets within the association, and shall be used only for such purposes, including to fix and repair or cause to be fixed and repaired or replaced such roads. All damages to the ponding area and the run-off spillway at the corner of Apache Gold Loop north and Lee Trevino Street as well as the two damaged areas on Apache Gold Loop north adjacent to the Franklin View Estates subdivision (the "Catalina Development") are the responsibility of Catalina Development, Inc. The Trustee will seek to have Catalina Development, Inc. make such repairs, but shall in no way be obligated to PVHOA for such damages. In this regard, PVHOA may use some or all of the $50,000.00 to seek Catalina Development, Inc. to make these repairs and/or to pursue action against Dona Ana County to take responsibility and ownership of all roads in subject subdivision.

The Chapter 7 Trustee has agreed to delete from the Settlement Agreement that portion of Paragraph 2. which states that the damages on Apache Gold Loop north and Lee Trevino Street are the responsibility of CDI, and agrees further to include a provision in the Settlement Agreement that the agreement will not affect any claims that may exist between PVHA and CDI. These changes would require consent from PVHA. In addition, records from the New Mexico Public Regulation Commission indicate that there is no homeowners association named Paseo Village Homeowners' Association. The association name on record with the New Mexico Public Regulation Commission which reflects the names of three of the officers who signed the Settlement Agreement is Santa Teresa Paseo Home Owners Association. *See* Exhibit E.

In accordance with Rule 9019(a), Fed.R.Bankr.P., which provides that the Court may approve a compromise or settlement after notice and a hearing, the Chapter 7 Trustee has authority to enter into settlements. *See In re Kopexa Realty Venture Co.,* 213 B.R. 1020, 1023

5

(10th Cir. BAP 1997) (noting that "[t]he authority for a trustee to enter into settlements is to be found in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure."). While the decision to approve a compromise or settlement lies within the court's discretion, "[t]he decision . . . must be 'an informed one based upon an objective evaluation of developed facts.'" *Id.* at 1022 (quoting *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989)). The court must determine whether the settlement is in the best interest of the estate, by assessing and balancing "the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.*" Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir.1996). Some deference is given to the business judgment exercised by the trustee in reaching a compromise or settlement, yet the proponent of the compromise or settlement bears the burden of persuading the court that the compromise or settlement is fair and equitable. *In re Key3Media Group, Inc.,* 336 B.R. 87, 93 (Bankr.D.Del. 2005)(citations omitted).

    Based on the testimony and evidence before the Court, the Court finds that the Settlement Agreement meets the standards for approval under Rule 9019(a), Fed.R.Bankr.P. and is in the best interest of the estate. The Court is satisfied that the Chapter 7 Trustee performed a sufficient investigation into the claim of PVHA and the bankruptcy estate's potential liability for repair costs to the streets within the Paseo Village subdivision, including his inspection of the condition of the streets within the Paseo Village subdivision and the Santa Teresa subdivision as a whole, and his investigation as to the potential repair costs. The amount the Chapter 7 Trustee proposes to pay in settlement of the claim is reasonable in light of the estimated costs for repair to the existing damages and in light of the release of the Chapter 7 Trustee under the Settlement Agreement for any continuing liability for future repair costs. For these reasons, the Court

6

concludes that the Settlement Agreement should be approved. Whether PVHA uses the funds it receives from the Chapter 7 Trustee under the Settlement Agreement to pursue claims against CDI is insufficient grounds to deny the Motion. To the contrary, the fact that the effect of the Settlement Agreement will be to relieve the bankruptcy estate from any ongoing dispute with CDI over maintenance and repair costs associated with streets located in the Paseo Village subdivision is another reason to approve the Settlement Agreement.

CDI argues that if the Settlement Agreement is approved, it must be subject to the grant of access by the Chapter 7 Trustee to CDI over the streets in the Santa Teresa subdivision. Under the Settlement Agreement the Chapter 7 Trustee will no longer have any interest in the streets in the Paseo Village subdivision; thus whether the grant of access contained in the Memorandum constitutes an easement that runs with the land need not be decided within the context of the Chapter 7 Trustee's Motion. However, because the issue was raised by CDI in its objection, and because this issue must eventually be resolved in some forum, the Court will address it here.

Generally, "[p]roperty interests of parties in bankruptcy proceedings are 'created and defined by state law.'" *In re Armstrong,* 292 B.R. 678, 689 (10th Cir. BAP 2003) (quoting *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Similarly, "'[t]he interpretation and enforcement of contracts is (sic ) traditionally within the province of state courts,' . . . and the general presumption is in favor of applying state law." *Madsen v. Prudential Federal Sav. & Loan Ass'n,* 635 F.2d 797, 802 (10th Cir. 1980) (quoting *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3d Cir. 1975)). Because the Memorandum concerns real property located in New Mexico, the Court finds that New Mexico law governs its interpretation.

As a preliminary observation, the Court notes that the Memorandum is not properly

7

acknowledged by all parties. Under New Mexico law, an acknowledgment of a deed or other writing affecting real estate by the party whose real estate is affected is a prerequisite to its being properly recorded. N.M.S.A. 1978 § 14-8-4 (Repl. Pamp. 2003); *McBee v. O'Connell,* 16 N.M. 469, 120 P. 734 (1911). Only the signature of Mr. Collins, the grantee, is acknowledged on the Memorandum. The Chapter 7 Trustee, as grantor of the right of access, did not acknowledge the Memorandum before a notary public. Consequently, the Memorandum is ineligible for recording, and may not be binding against subsequent parties without notice of its contents.[4]

In addition to the defect in the acknowledgment, the Court finds that language of Memorandum is insufficient to grant a permanent easement. The Memorandum, dated August 4, 2005, is a one-page document addressed to Barney Given, Trustee from Frank S. Ainsa, Jr. The Memorandum provides, in its entirety:

> Barney: In order to memorialize the agreement reached this morning between you and Greg Collins, and the entities he owns or controls, I am submitting the following for your review and approval:
>
> 1. Barney Given, Trustee and Greg Collins (including Catalina Development, Inc., Santa Teresa Country Club, LLC, Mesilla Bolson Properties, LLC and PDD, LLC) agree that they will jointly pay for the cost of bringing that part of Apache Gold Loop shown on Exhibit A (only that part fronting on the 13 lots in Franklin View Estates that are circled) to a state of good condition and repair and will negotiate in good faith over the next 60

---

[4] *See Baker v. Baker,* 90 N.M. 38, 40, n.1, 559 P.2d 415, 417 (1977) (noting that the recording statute only prevents the recording of an unacknowledged deed, but does not make it void, so that an unacknowledged deed remains binding between the parties, and against persons with actual notice of the document) (citations omitted); *McBee,* 16 N.M. 469 (unacknowledged document that was improperly recorded does not constitute constructive notice to a subsequent purchaser with no actual knowledge). *See also,* N.M.S.A. 1978 § 14-9-2 (Repl. Pamp. 2003) (regarding constructive notice, providing that documents recorded in the real property records constitute "notice to all the world of the existence and contents of the instruments so recorded from the time of recording."); *Angle v. Slayton,* 102 N.M. 521, 523, 697 P.2d 940, 942 (1985) ("all the world" is limited to mean those persons who are bound to search the title records).

days to arrive at an agreement on the split of the total cost.

2. Barney Given, Trustee hereby grants Greg Collins (including Catalina Development, Inc., Santa Teresa Country Club, LLC, Mesilla Bolson Properties, LLC and PDD, LLC) a right of access for all purposes over all the private streets in Santa Teresa, New Mexico that are owned by the Phyllis L. Crowder Bankruptcy Estate.

Please indicate your approval by signing below.

*See* Exhibit C.

Under New Mexico law, the court is not "restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous." *Mark V, Inc., v. Mellekas,* 114. N.M. 778, 781, 845 P.2d 1232, 1235 (1993). In other words, "[t]he court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear." *Id.* citing *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991). An ambiguity exists "[i]f the court determines that the contract is reasonably and fairly susceptible of different constructions." *Mark V., Inc.,* N.M. at 781, 845 P.2d at 1235 (citing *Vickers v. North Am. Land Dev., Inc.,* 94 N.M. 65, 68, 607 P.2d 603, 606 (1980)).

In applying these standards to the Memorandum, the Court finds that an ambiguity exists. The Chapter 7 Trustee testified that the Memorandum was reached as a result of a meeting among himself, Greg Collins, representatives from the city and representatives of Dona Ana County wherein the parties agreed to a "sixty-day cooling off period." Paragraph 1. by its terms references a sixty-day period, which is consistent with this testimony. Paragraph 2., on the other hand, contains no qualifying language in the granting of a right of access over the streets in the Santa Teresa subdivision. Given the circumstances surrounding the context in which the

9

Memorandum was created, the Court finds that it is not clear wether the Memorandum as a whole was intended to apply only for a limited, sixty-day period. However, because counsel for CDI drafted the Memorandum, the Court will resolve this ambiguity against CDI. It is appropriate to construe an ambiguity in a contract against the party who drafted it when the Court cannot determine the parties' intent from the contract terms. *See Smith v. Tinley,* 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984)("ambiguities in a contract are to be construed against the party who drafted it.")(citation omitted); *Gardner-Zemke Co. v. State,* 109 N.M. 729, 733, 790 P.2d 1010, 1014 (1990) (noting that the rule that ambiguities are to be construed against the drafter only applies when the court is otherwise unable to ascertain the intent of the parties) citing *El Paso Natural Gas Co. v. Western Bldg. Assocs.,* 675 F.2d 1135, 1141 (10th Cir. 1982). For these reasons, the Court concludes that the Memorandum does not create a permanent easement over the streets in the Santa Teresa subdivision.

WHEREFORE, IT IS HEREBY ORDERED that the Motion to Approve Settlement of Paseo Village Homeowners Association Claim No. 184 is GRANTED, subject to the following:

1. That the correct name of PVHA be substituted in the Settlement Agreement;

2. That all references in paragraph 2 of the Settlement Agreement which assign responsibility for the damage to streets in the Paseo Village subdivision to CDI be deleted;

3. That the Settlement Agreement provide that it does not affect any claims that may exist between PVHA and CDI; and

4. That the Chapter 7 Trustee obtain consent to these changes from the appropriate parties on behalf of the Santa Teresa Paseo Home Owners Association, and file such Amended Settlement Agreement with the Court within thirty days of the date of entry of this order. If

such Amended Settlement Agreement is not filed within thirty days of the date of entry of this

Order, the Motion shall be denied.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Douglas R. Vadnais
Attorney for Chapter 7 Trustee
PO Box 2168
Albuquerque, NM 87103

Francis S. Ainsa, Jr.
Attorney for Catalina Development
5809 Acacia Circle
El Paso, TX 79912