# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  **PHYLLIS CROWDER,**                                          **No. 7-96-10336 ML**

**Debtor.**

## MEMORANDUM OPINION RE MOTION FOR PARTIAL SUMMARY JUDGMENT ON OMNIBUS OBJECTION TO CLAIM OF CATALINA DEVELOPMENT, INC.

THIS MATTER is before the Court on a portion of the Chapter 7 Trustee's Omnibus Objection to Remaining Disputed Claims filed on March 21, 2006 (the "Omnibus Objection") concerning the Trustee's objection to Proof of Claim No. 175 filed on September 12, 2000 by Catalina Development, Inc., Santa Teresa Country Club, LLC and Mesilla Bolson Properties, LLC ("Mesilla Bolson), (collectively referred to as "Catalina"). Omnibus Objection ¶¶ 69 – 74 ( Doc. 1553). Catalina's Claim has two components: 1) a claim for the fair market value of two tracts of real property, one tract allegedly valued at $850,000.00 and the other allegedly valued at $235,000.00 (the "Real Estate Claim"); and 2) a claim for the amount required to drill water wells to replace wells that Catalina contends should have been conveyed to it in a settlement transaction with the Debtor and the Trustee as successor of the Debtor (the "Well Claim").

On October 6, 2006, the Trustee filed a motion for partial summary judgment as to both the Real Estate Claim and the Well Claim (the "Motion"); Catalina filed a Response and Memorandum on October 23, 2006; the Trustee filed a Reply. Docs.1599, 1600, 1601 and 1605.

The Motion will be denied in part because material fact issues preclude summary judgment on the Real Estate Claim.  The Motion will be granted as to the Well Claim. The following are the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

1

**The Crowder Land Development Business**

1. In the late 1960's C.L. Crowder Investment Company ("Investment Company"), 100% owned by the Debtor and her former husband Charles Crowder ("Crowder"), belonged to a partnership known as Santa Teresa Developers, in connection with the development of 29,000 + acres of real property in Santa Teresa, New Mexico. Trustee's Ex. A Crowder Aff. ¶ 2; Trustee's Ex. B p. 11.

2. In December 1976 the New Mexico Public Utility Commission issued a certificate of convenience and necessity (CCN) to Santa Teresa Developers[1] authorizing it to provide water utility service. Crowder Aff. ¶ 3. Santa Teresa Developers drilled several water wells and built a water utility infrastructure. Crowder Aff. ¶ 4. The water utility infrastructure consists in part of Well 6 and a water storage tank, both of which are located on a 2.56 acre tract on the south side of Airport Road, Santa Teresa, New Mexico. Crowder Aff. ¶ 4.

3. In 1977, Santa Teresa Developers was dissolved, and its assets were transferred to Investment Company. Trustee's Ex. B p. 11. In 1979, Investment Company acquired Santa Teresa Country Club, Inc. ("STCC"), and transferred the utility assets to STCC. Trustee's Ex. B p. 12; Trustee's Ex. E p. In 1986, all of the assets of STCC were conveyed to Investment Company, which was later liquidated with all of its assets and liabilities distributed to the Debtor and Crowder individually. Trustee's Ex. B p. 12; Trustee's Ex. E p. 4.

4. In 1987 Santa Teresa Services Company ("STSC"), also 100% owned by Debtor and Crowder, was formed, and in 1988, STSC received a CCN to provide sewer utility services.

---

[1] Santa Teresa Developers was also known as the Santa Teresa Water Company. Trustee's Ex. B p. 11.

2

Trustee's Ex. B p. 14; Trustee's Ex. E p. 4; Crowder Aff. ¶¶ 8-9. STSC constructed a sewage treatment plant on a portion of a 15.002 acre tract of land. Crowder Aff. ¶¶ 8-9.

5. The Court will refer to the two tracts of land, upon which water and sewer utility structures were located, as the "Utility Parcels."

6. In 1985, Investment Company executed a $5.4 million promissory note (the " Note") that was later acquired by the Resolution Trust Corporation (the "RTC"). The Note was guaranteed by Crowder and the Debtor and was secured by mortgages on land in Santa Teresa New Mexico. Crowder Aff. ¶ 6. Catalina acquired the Note from the RTC. Trustee's Ex. C (Collins Dep. p. 16 line 22 – p. 17, line 4).

**Bankruptcy, Catalina's Claim and the Settlement**

7. Debtor filed this bankruptcy proceeding under Chapter 11 of the Bankruptcy Code on January 26, 1996. The Debtor and Crowder were married as of the filing date. On June 4, 1999, the case was converted to Chapter 7.

8. On April 7, 1997, Crowder filed a Chapter 11 bankruptcy proceeding, No. 11-97-11981, which was dismissed and closed on October 11, 2000.

9. After Catalina filed a motion to lift the stay, Catalina, the Debtor and Crowder entered into a settlement agreement. (the "Letter Agreement"). Trustee's Ex. D.

10. The Letter Agreement specifically required the Debtor

to convey by Special Warranty Dee [sic] and Bill of Sale all of the real property marked in Red on the map . . . (hereinafter, the "Red Lands");

to convey by Special Warranty Deed and/or Bill of Sale all assets (including cash and accounts receivable) making up the business known as the Santa Teresa Country Club;

to convey by Special Warranty Deed fee simple title to the water rights to 2000 acre feet of water and fee simple title to well number 24 . . . . this provision shall not be construed

3

to entitle [Catalina] to more than 2,000 acre feet of water rights. . . ."

Trustee's Ex. D. ¶¶ 3 (a) – (c).

11. Gregory Collins ("Collins")is Catalina's owner and is a member of Mesilla Bolson, Catalina's third party designee to receive title to the property under the Letter Agreement. Catalina's Ex. D Collins Aff. p. 3. Based on information from Crowder as to which parcels Crowder and Debtor owned, Collins prepared the map referred to in the Letter Agreement showing parcels 1 through 20 circled in red ink, which were referred to as the Red Lands. A title search was not performed before the map was prepared. Collins Aff. p. 1.

12. In its Claim, Catalina asserts that under the Letter Agreement, an order entered by this Court in October 1999 (the "October 1999 Order"), and an order entered by this Court in August 2000 (the "August 2000 Order"), it has a claim for the fair market value of several parcels within the Red Lands that should have been conveyed to it on August 8, 2000. The Claim specifically references Parcels 1, 6, 9, 11, 12, and 20. The Utility Parcels, not initially mentioned in the Claim, are identified as Parcels 7 and 15 in the Letter Agreement.

13. The Well Claim asks for the amount required to replace water wells numbered 2, 17, 19, 24 and 32 that Catalina contends should have been, but were not, conveyed to it as assets of STCC.

14. On October 11, 2000, the Trustee responded to the Real Estate Claim and the Well Claim and admitted that Catalina received only an undivided one-half interest in Parcels 9, 11, 12, and 20 but disputed the amount required to compensate Catalina for these parcels. The Trustee denied that Catalina failed to receive all of Parcel 1 and asserted that Parcel 6 was never property of the estate. Catalina's claims regarding these parcels are not currently before the

4

Court; however, Catalina's claim for the value of the Utility Parcels is now the focus of the dispute.

### City of Sunland Park Condemnation Action

15. On August 16, 1996, two months after the Letter Agreement was executed, the City of Sunland Park, New Mexico (the "City") filed a condemnation action in state district court, Dona Ana County, New Mexico (the "state court") to obtain both real and personal property used in STSC's operation of the water and sewer utilities. First Amended Petition, Trustee's Ex. I Parts 1-3; Trustee's Ex. F.[2]

16. Catalina intervened in the condemnation action, and filed an answer, but did not assert its right to receive the Utility Parcels under the Letter Agreement. Trustee's Ex. F at ¶¶ 14 and 80.

17. On May 2, 1997, counsel for the City sent a letter to all counsel of record attaching property descriptions of the condemned real property. Trustee's Ex. G (the "Condemnation Letter"). Well Nos. 6, 8 and 19 were included in the property described in the Condemnation Letter. Trustee's Ex. G. The Condemnation Letter also states the following:

> It is important to note that the City is not necessarily condemning a fee interest in the properties . . . . The City is condemning STSC's entire interest in these properties, which may be less that a fee interest, and is not condemning any interest held by Charles or Phyllis Crowder in these properties.

Trustee's Ex. G.

18. On February 7, 2000, the state trial court ruled that Catalina lacked standing to participate in the valuation trial. In response, Catalina asserted that Mesilla Bolson had an

---

[2] *City of Sunland Park v. Santa Teresa Services Co. et al.*, 134 N.M. 243, 248, 75 P.3d 843, 848 (N.M.Ct.App. 2003).

ownership interest in Wells 8 and 19 because those wells were located on the Red Lands and were used by STCC to irrigate the golf course. The state court denied this claim, and the New Mexico Court of Appeals affirmed the ruling. Trustee's Exs. F and G.

### Chapter 7 Trustee's Enforcement of Settlement and Transfer of Utility Parcels

19.  On July 29, 1999, a few months after the Debtor's case was converted to Chapter 7, the Chapter 7 Trustee filed a motion to enforce the Letter Agreement, which the Court granted in October 1999 (the "October 1999 Order").  In the October 1999 Order, however, the Court also made the following findings:

> 1) that at the time of the 1996 Letter Agreement, the Debtor was not in possession of her own records, . . . evidencing the state of title to real property in which she had an interest;
>
> 2) that the Debtor and Catalina both believed that all of the Red Lands were jointly owned by the Debtor and Crowder when in fact, certain portions of the Red Lands were owned by the Debtor and Crowder together with third parties; and
>
> 3) that certain portions of the Letter Agreement cannot be complied with because of the mutual mistake of fact regarding the ownership of portions of the Red Lands . . .

Catalina's Ex. G p. 2.

20.  The October 1999 Order allowed Catalina to waive its rights under the Letter Agreement in return for a claim for the value of the "that portion of the Red Lands and other property that was contemplated to be conveyed pursuant to the Letter Agreement but which will not be received, . . ." Catalina Ex. G p. 3. Catalina filed a Notice of Election in which it elected to waive "those provisions of the Letter Agreement that cannot be complied with, . . ." Catalina's Ex. H.

21. By March 2000, after the parties failed to reconcile the amount of Catalina's claim under the October 1999 Order, the Trustee filed a Motion to Compel Closing asking for court

6

intervention. Catalina's Ex. K, Trustee's Motion to Compel Closing Doc. 988.

22. Consequently, the Court issued an order (the "August 2000 Order") allowing Catalina to assert a monetary claim "for the fair market value of each real property interest in the Red Lands, and a claim for the fair market value of any other asset making up the business of Santa Teresa Country Club, that was not conveyed by Trustee that Catalina contends should have been conveyed pursuant to the Letter Agreement . . ." August 2000 Order p.10.

23. On August 8, 2000, the Trustee executed and delivered to Catalina a Special Warranty Deed, which conveyed all of the parcels of property listed in the Letter Agreement, including the Utility Parcels. Trustee's Ex. P. Catalina's counsel prepared the Special Warranty Deed using legal descriptions from a title insurance company. Response Ex. C Ainsa Aff. p. 1.

**Judgment Valuing the Assets Condemned**

24. In April 2000, a few months prior to the conveyance of the Red Lands to Catalina, a jury valued the condemned property at $2,000,000 (the "Valuation Judgment"). The state trial court determined that the condemned assets included Wells Nos. 6, 8, 19, 30 and 31; and all interests of STSC in land in fee or lesser interests including easements, however acquired, on which the assets are located. Trustee's Ex. Q ¶¶ 1, 5.

25. In December 2004, the New Mexico Court of Appeals affirmed the Valuation Judgment, and on December 4, 2004 the Trustee executed deeds conveying the Utility Parcels to the City. Trustee's Ex. F; Catalina's Ex. E.

26. Catalina asserts that the deeds to the City clouded its title to the Utility Parcels and asks the Court to require the Trustee to either clear title or pay Catalina the value of the Utility Parcels.

**The Well Claim And The Well Use Agreement**

27. The Letter Agreement required the Debtor "to convey by Special Warranty Deed fee simple title to the water rights to 2000 acre feet of water and fee simple title to well number 24 . . . . this provision shall not be construed to entitle [Catalina] to more than 2,000 acre feet of water rights. . . ." Trustee's Ex. D. ¶¶ 3 (c).

28. Under the August 2000 Order, the Trustee is required to convey to Catalina's designee fee simple title to Well 24 and to "enter into a Well Use Agreement with Catalina, or its assigns . . ." August 2000 Order at ¶ E.

29. On August 8, 2000, the Trustee and STCC entered into a Well Use Agreement allowing STCC to use water wells labeled the Trustee's "Shared Wells" (Wells 4, 17, 32 and 33).

30. In the Well Use Agreement, the Trustee acknowledged that Well No. 24 does not have the capacity to produce 2000 acre feet per annum of water; that the Shared Wells and Well No. 24 had been historically used to irrigate the Golf Courses and that STCC needs the Shared Wells to properly irrigate the golf courses. Trustee's Ex. O p. 1.

**Summary Judgment Is Not Appropriate On The Real Estate Claim**

The Trustee asks the Court to grant summary judgment because the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material facts and the Court should deny Catalina's Real Estate Claim and its Well Claim as a matter of law.[3]

---

[3] Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056.

8

## Reformation of the Letter Agreement Based On Mutual Mistake

The Trustee argues that the Debtor, Crowder and Catalina did not intend to include the Utility Parcels in the Red Lands as defined in the Letter Agreement and that the Letter Agreement should be reformed for mutual mistake. Catalina would then have no claim to the value of those parcels. Catalina argues that fact issues preclude summary judgment.

A contract may be reformed under New Mexico contract law [4] when the contract does not express what was really intended by the parties.[5] A court may consider extrinsic evidence that a writing did not express the true agreement of the parties.[6] The party requesting reformation, however, must show with clear and convincing evidence that the agreement as written was not the agreement intended.[7] Here, the Trustee has the burden to prove by clear and convincing evidence that at the time the parties entered into the Letter Agreement, none of them intended to include the Utility Parcels in the Red Lands.

---

[4] *See Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program* 1981, 836 F.2d 462, 465 (10th Cir.1987)( "We construe a settlement stipulation in the same manner as a contract to determine how it should be enforced.").

[5] *See State ex rel. State Highway and Transportation Dept. v. Garley*, 111 N.M. 383, 388, 806 P.2d 32, 37 (1991) ("A mistake sufficient to reform a contract is present when the parties assume that a contract expressed their intention, whereas in fact it said something else.").

[6] *Twin Forks Ranch, Inc. v. Brooks*, 120 N.M. 832, 835, 907 P.2d 1013, 1016 (N.M.App. 1995), appeal after remand, 125 N.M. 674, 964 P.2d 838 (1998) ("Twin Forks II").

[7] *Twin Forks II,* 125 N.M. 674, 678, 964 P.2d 838, 842 (1998) (finding that evidence was insufficient to show that parties, who were unaware of water rights appurtenant to land conveyed, intended to exclude such water rights from the conveyance); *Collier v. Sage*, 51 N.M. 147, 150, 180 P.2d 242, 243 (1947) (stating that to prove a right to reform an instrument for mutual mistake, "the proof must be of the clearest and most satisfactory character."); *Pacheco v. Martinez*, 97 N.M. 37, 636 P.2d 308, 314 (N.M. App. 1981) (". . . the burden of proof upon the party seeking reformation must be sustained by evidence that is satisfactory, clear and convincing.").

The Trustee argues that both the Debtor and Crowder testified that they intended to transfer only the real and personal property owned by STCC and some additional parcels of vacant land, and that they did not intend to transfer any of the property belonging to STSC.[8] Crowder testified that he considered the Utility Parcels to be STSC property, which he never intended to convey to Catalina. The Court agrees with the Trustee that the record shows a mistake on the part of the Debtor and Crowder; however, the Trustee must also show that the undisputed facts prove that Collins, on behalf of Catalina, also did not intend to include the Utility Parcels in the Red Lands.

The Trustee points to Collins's 2006 deposition in which he stated he did not intend to purchase land owned by STSC, to argue that Collins did not intend to acquire the Utility Parcels.[9] In addition, the Trustee argues that Collins must not have intended to acquire the Utility Parcels

---

[8] Crowder's testified that he "never understood or intended that land used by STSC for its current and future infrastructure would be conveyed to Catalina[,]" and "[w]ith the exception of the real estate associated with the Santa Teresa Country Club, it was my intent to convey only vacant, undeveloped parcels as consideration for the 1996 Letter Agreement."
*See* Crowder Aff. ¶ 13-14.
 The Debtor testified at the September 29, 1999 hearing on the Motion to Compel closing as follows:
  Q: What did you understand you were going to be left with after this property was deeded to Mr. Collins?
  A: . . . it was my understanding we would be left with any of the land that we needed to operate our Services Company from and our sewer plant and our water rights which are associated with the actual wells, . . .
Trustee's Ex. S Transcript of Proceedings p. 55, line 20 – p. 56 line 21.

[9] Q: [by Mr. DeYoung] Did Mr. Crowder tell you he was conveying – he would convey to you land owned by Santa Teresa Services Company?
  A: No.
  Q: Was it your intent to purchase land owned by Santa Teresa Services Company?
  A: No.
Trustee's Ex. D Collins 2006 Dep. at p. 23 lines 25 – p. 24 line 6.

Case 96-10336-trc7    Doc 1715    Filed 08/31/07    Entered 08/31/07 13:28:29 Page 10 of 20

or he would have caused Catalina to assert this right in the condemnation action. Instead, after Catalina was allowed to intervene, it did not assert its right to receive the Utility Parcels under the Letter Agreement. And, after the state court determined that Catalina lacked standing to participate in the valuation trial, Catalina asserted a claim of ownership of only two water wells, Wells 8 and 19, neither of which were located on the Utility Parcels.

Catalina asserts that a factual dispute prevents the Court from finding that Collins did not intend to acquire title to the Utility Parcels. In a 2007 affidavit made subsequent to Collins' deposition, Collins asserts that despite his intention not to acquire STSC property, the Utility Parcels were never owned by STSC and at the time of the Letter Agreement, he knew that the Debtor and Crowder individually held title to the Utility Parcels. Catalina's Ex. D Collins Aff. p. 2.[10] Catalina also argues that it did not need to assert its right to receive the Utility Parcels in the condemnation action because the metes and bounds description of the Utility Parcels were not attached to the condemnation petition, and the Condemnation Letter confirms that the City did not intend to acquire the land owned in fee by the Debtor and Crowder. Thus, the Utility Parcels were available for conveyance to Catalina despite the condemnation of the STSC utility assets. Collins Aff. p. 2. With respect to the Debtor's and Crowder's intentions, Catalina argues that the

---

[10] Collins affidavit states

> I was aware of the fact that the sewer treatment plant operated by [STSC] was located on a portion of Red Land Parcel 7. I was also aware that Well 6 and a water tower were located on Red Land Parcel 15. However, I was also aware of the fact that Charles L. Crowder and Phyllis L. Crowder owned Parcel 7 and Parcel 15 [the Utility Parcels] and could convey these parcels to me.
> . . .
> [The Title] Commitments showed that Charles L. Crowder and Phyllis L. Crowder owned Red Land Parcels 7 and 15.

Catalina's Ex. D pp. 2-3.

11

map clearly showed the Utility Parcels as part of the Red Lands. The map was used throughout the negotiation, execution and enforcement of the Letter Agreement, and according to Catalina, if the Debtor and Crowder did not want to convey those parcels, they would have objected to the map. *See* Catalina Ex. C, Ainsa Aff. p. 2. The Trustee maintains that instead, the map merely illustrates the mistake, and the fact that the Trustee did not object at the enforcement hearings is insufficient to create a fact issue as to whether the parties intended to include the Utility Parcels in the Red Lands.[11] When the Court considers all of the evidence and the reasonable inferences from the evidence in the light most favorable to Catalina,[12] the Court concludes that Catalina has raised material fact issues sufficient to defeat summary judgment based on mutual mistake.[13]

### Reformation of the Letter Agreement Based On Unilateral Mistake

The Trustee also contends that under New Mexico law, the Court may reform the Letter Agreement based on a unilateral mistake by the Debtor and Crowder if the Court also finds that Catalina engaged in fraudulent or inequitable conduct.[14] The Trustee asserts that the undisputed

---

[11] Notably, the focus of the hearing in 1999 on the Motion to Enforce, at which the map was used as an exhibit, was to correct the mutual mistake of the parties as to the fee simple ownership of Parcels 6, 9, 11, 12 and 20, and not as to the Utility Parcels.

[12] The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. *Weir v. Anaconda Co.*, 773 F.2d 1073, 1079 (10th Cir. 1985) (recognizing that in the Tenth Circuit, a movant must be viewed in the light most favorable to the opposing party and that the movant must demonstrate entitlement to summary judgment beyond a reasonable doubt.).

[13] *See Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 945 (10th Cir. 1989) (noting that non moving party must show the presence of a triable fact).

[14] *See Kimberly, Inc. v. Hays*, 88 N.M. 140, 537 P.2d 1402, 1406 (1975)(finding that one party's knowledge of mistake in acreage of property and failure to disclose the variance in acreage amount to other party, who had no knowledge of difference, justified reformation of note, mortgage and deed for unilateral mistake), citing *Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (1970) and *Morris v. Merchant*, 77 N.M. 411, 423 P.2d 606 (1967).

12

facts show that Catalina acted either inequitably or in bad faith.

The record shows that the Debtor did not have access to her property records, and that Collins prepared the map of the Red Lands based on Crowder's representations as to which parcels out of several parcels, he and the Debtor owned.[15] The Trustee asserts that he relied on the accuracy of the property descriptions from a title commitment acquired by Catalina, which were attached to the Special Warranty Deed prepared by Catalina's counsel. The Trustee asks the Court to draw the inference that Collins purposefully included the Utility Parcels in the Red Lands knowing that the Debtor and Crowder did not intend to convey them. The evidence, however, shows that Collins prepared the map of the Red Lands based on information from Crowder himself. At most, the Trustee has only shown that Catalina had the opportunity to act inequitably, not that it did. The Trustee adds that during the condemnation action, Catalina knew that real property and personal property assets of the utility, were the subject of the Condemnation Action, yet Catalina never informed the Trustee prior to the 2004 conveyance of the Utility Parcels to the City that the Trustee had previously conveyed the same parcels to Catalina in 2000. And, Catalina explains its failure to assert a claim in the condemnation action by claiming reliance on the Condemnation Letter in which the City's attorney states that the City was not condemning fee title to property owned by the Debtor and Crowder. Catalina's explanations of its actions regarding Collins' inclusion of the Utility Parcels in the map of the Red Lands and of its failure to assert a claim in the condemnation action require the Court to judge credibility. Catalina has raised fact issues as to whether its conduct was inequitable or in bad faith, the Court cannot grant summary judgment reforming the Letter Agreement on the basis

---

[15]*See* Catalina's Ex. G at ¶ 4; Collins Aff. p. 1.

13

of unilateral mistake.

Alternatively, the Trustee contends that under New Mexico law, reformation is available to correct a unilateral mistake when the party seeking reformation can show hardship in excess of the benefit or the reasonable expectation of the other contracting party.[16]  In *Crown Life Ins.*, the New Mexico Supreme Court stated

> Even where the [unilateral] mistake was not in any way due to the conduct of the other party, and the latter did not know a mistake was being made, equity may cancel the contract if its enforcement will inflict on the party seeking rescission hardship out of all proportion to the value of the other party's justifiable expectation interest.[17]

The Trustee argues that Catalina's claim of 1.85 million for the value of the Utility Parcels will cause severe financial hardship on the estate and ultimately, the creditors of the estate, and that this hardship is proportionately greater than the value Catalina expected to receive in the settlement. The Trustee, however, has not sufficiently shown how these values impose a disproportional hardship to the estate or a disproportionate benefit to Catalina.  Thus, fact issues also preclude summary judgment reforming the Letter Agreement under this theory.

### Summary Judgment Is Appropriate On The Well Claim

Catalina asserts that under the Letter Agreement, Debtor was required to convey to Catalina all assets of STCC, which included Wells 2, 17, 19 and 32 (hereinafter, referred to as the

---

[16] *See Buck v. Mountain States Investment Corp.*, 76 N.M. 261, 264, 414 P.2d 491, 493 (1966) ("It is well established in this jurisdiction, and generally, that a court of equity may grant reformation of a contract where either by mutual mistake of the parties, or through mistake on the part of one party and fraud or inequitable conduct on the part of the other party, the written instrument drafted to evidence a contract fails to express the real agreement and intentions of the parties.").

[17] *Crown Life Ins. Co. v. Candlewood, Ltd.*, 112 N.M. 633, 637, 818 P.2d 411, 415 (1991) (quoting H. McClintock, *Handbook of the Principles of Equity* § 90, at 243-44 (2d ed. 1948)).

14

"Four Wells").[18] Catalina reasons that since the Four Wells had been used to irrigate the STCC golf courses, they were assets of STCC and should have been conveyed to it. Collins Aff. p. 4.[19] Catalina asserts a claim for the amount necessary to cover the "cost to drill wells to replace the wells that were not conveyed. . . . The total cost is approximately $798,462.26 to [sic] adjustment for Well 2 which is not in working condition." Proof of Claim No. 175 at pp. 9-10 ¶¶ 16 – 19.

The Letter Agreement provided

. . . C[atalina] shall be conveyed by Special Warranty Deed and/or bill of sale all assets (including cash and accounts receivable) making up the business known as the Santa Teresa Country Club, . . .
. . .
The Letter Agreement also required the conveyance of

. . . fee simple title to the water rights to 2000 acre feet of water and fee simple title to well number 24 . . . . this provision shall not be construed to entitle [Catalina] to more than 2,000 acre feet of water rights. . . .

Collins testified that at the time the Letter Agreement was executed, Crowder told him

that Well 24 would irrigate both golf courses and that no other wells were used to water the golf courses and were assets of [STCC]. This statement was false. I now know that other wells were used to water the golf courses and were assets of [STCC]."

### Preclusive Effect of State Court Decision Regarding Wells 8 and 19

The Trustee argues that the state court in the Condemnation Action[20] denied Catalina's

---

[18] Mr. Collins concedes that Well No. 8 was owned by STSC and abandons the argument as to Well No. 8. Catalina Ex. D Collins Aff. at p. 4.

[19] Proof of Claim No. 175 states, "At the Closing [of the Letter Agreement], the Trustee conveyed only Well 24 to Santa Teresa. Wells 2, 17, 19, and 32 are also assets of Santa Teresa Country Club and should have been conveyed." Proof of Claim No. 175 at p. 9, ¶ 17. Collins testified, "Catalina was supposed to be transferred all of the assets of [STCC] and Wells 2, 17, 19, and 32 were part of these assets." Collins Aff. pp. 4-5

[20] The state trial court concluded,
  The court finds there is no genuine issue of material fact regarding ownership of wells 8 and 19 and the ownership claim asserted by [CDI] and Messilla Bolson

15

claim to ownership of Wells 8 and 19, and the decision was affirmed on appeal.[21]  The Trustee

points to the following findings affirmed by the appellate court: 1) that Wells 8 and 19 were not

mentioned in the Letter Agreement and 2) that Wells 8 and 19 cannot be considered assets of

STCC merely because they were used to irrigate the STCC golf course.  The Trustee asserts that

either the *Rooker-Feldman* or collateral estoppel doctrines preclude relitigation of Catalina's

claim that any of the Four Wells should have been conveyed.[22]  This Court agrees that Catalina is

precluded from revisiting the state court determinations regarding Wells 8 and 19.[23]  However,

because the ownership of Wells 2, 17 and 32 was not before the state court, this Court is not

precluded under the *Rooker-Feldman* doctrine from considering Catalina's claim to these wells.[24]

In the condemnation action, Catalina argued that it owned Wells 8 and 19 because they

---

Properties is without merit. . . . Catalina also relies on the [Letter] Agreement . . .
This settlement agreement letter does not state that the water rights and wells 8
and 19 are included as part of the agreement.  The only reference in this
agreement to water rights and wells . . . expressly states Catalina will receive
2000 acre feet of water rights and fee simple title to well 24. There is no mention
of well number 8 or well number 19.
Trustee's Ex. M (Letter Ruling by 13th Judicial Court, Dona Ana County, New Mexico).

[21] Trustee's Ex. F (*City of Sunland Park*, 134 N.M. at 248, 75 P.3d at 848).

[22] *See In re Putvin*, 332 B.R. 619, 624 (10th Cir. BAP 2005) ("Under the *Rooker-Feldman*
doctrine, a federal court cannot overturn state court factual findings."); *State v. Bishop*, 113 N.M.
732, 734, 832 P.2d 793, 795 (N.M. App. 1992) ("For collateral estoppel to apply, . . .: (1) the
party against whom collateral estoppel is asserted must be the same party or be in privity with
the party to the original action; (2) the subject matter or the cause of action in the two suits must
be different; (3) the ultimate facts or issues must have been actually litigated; and, (4) the issue
must have been necessarily determined.").

[23] Catalina has also dropped its claim to Well 8.

[24] *In re Weinraub*, 361 B.R. 586, 593 (Bankr. S. D. Fla. 2007) (finding under *Rooker-Feldman* doctrine that prior state court order of eviction does not preclude determination of
claims by debtor in bankruptcy court that creditor violated TILA).

16

were physically located within the "exterior boundaries of the real property conveyed to it . . ."
134 N.M. at 260. The Trustee contends that because Catalina is making the same argument as to
Wells 2, 17 and 32, thus, Catalina is precluded under the doctrine of collateral estoppel from
making a claim here to compensation for those wells. Collateral estoppel bars the "relitigation of
issues actually and necessarily decided in a prior suit."[25] Because the state court did not decide
the ownership of Wells 2, 17, and 32, and did not consider whether these wells were within the
boundaries of the STCC lands or whether they were assets of STCC, Catalina is not barred from
asserting that these wells should have been conveyed, but were not. Catalina is not precluded
from asserting that the Letter Agreement required the Trustee to convey Wells 2, 17, and 32 in
addition to Well 24 under either by *Rooker-Feldman* of collateral estoppel doctrines.

### The Clear Language of the Letter Agreement Requires Conveyance Of Only Well 24

Catalina argues that because the Letter Agreement required Debtor to convey all assets of
STCC, and since the Four Wells were used to irrigate the STCC golf courses, those wells should
have been conveyed to Catalina as assets of STCC. The Trustee makes several arguments in
response. First, the Trustee argues that the plain language of the Letter Agreement requires the
conveyance of only one well, necessarily excluding all other wells.[26] Next, the Trustee argues
that the wells could not be considered assets of STCC merely because they were used to irrigate
the golf courses. Finally, the Trustee argues that water wells in general were not included in the

---

[25] *State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793, 795 (N.M. App. 1992), quoting
*Silva v. State*, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987).

[26] *See Bettini v. City of Las Cruces*, 82 N.M. 633, 635, 485 P.2d 967, 969 (1971)(citing
doctrine of *expressio unius est exclusio alterius* which states "[w]here authority is given to do a
particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all
other modes are excluded.").

categories of STCC assets described in the Letter Agreement, therefore, any additional water wells were not considered assets of STCC.[27]

The Court agrees with the Trustee that the Letter Agreement requires the Debtor to convey only one well, Well 24, thus the Trustee is under no obligation to convey the additional Four Wells to Catalina. By specifically naming only Well 24, the Letter Agreement necessarily excluded any other named wells. Even though the Letter Agreement requires the Debtor to convey Well 24 and the water rights to 2000 acre feet of water per annum, and although the parties stipulated that Well 24 cannot deliver 2000 acre feet of water per annum, this does not mean that the Debtor was under obligation to transfer additional wells along with the water rights. Thus, under the plain language of the Letter Agreement, the Trustee is under no obligation to convey the Four Wells.

Alternatively, the Trustee argues that the additional Four Wells were not required to be conveyed to Catalina because "water wells" were not included in the general categories of STCC assets to be conveyed. Those categories are as follows: 1) cash and accounts receivable; 2) buildings; 3) all real property making up STCC; 4) the tennis courts and 5) the golf course. Contract law dictates that only items of the same type as, or similar to, the listed categories can be included in the general meaning of a term, here the "assets of STCC," and because water wells were not included in those categories, the Letter Agreement cannot be construed to include wells other than the single specified well, Well 24. The Court agrees that under this alternative theory,

---

[27] *See Maralex Res., Inc. v. Gilbreath*, 134 N.M. 308, 318, 76 P.3d 626, 636 (2003) ("Where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned.").

Catalina cannot make a claim for the value of the Four Wells.

Even if the Letter Agreement could be interpreted to require conveyance of additional wells, Catalina's execution of the Well Use Agreement (Trustee's Ex. O) acts as an accord and satisfaction of any right to additional wells. Under accord and satisfaction, a party may discharge an obligation under a contract by substituting another agreement for the obligation and performing the substituted agreement.[28] As a matter of public policy, courts presume that when parties have settled a dispute they "intended a complete accord and satisfaction of their respective claims against each other arising out of the facts underlying the explicitly settled dispute."[29] The burden to rebut this presumption is on the party asserting that a settlement does not apply to all issues between the parties.[30]

The Well Use Agreement provides STCC with the exclusive right to use several "shared wells" described as Well Nos. 4, 17, 32 and 33 (the "Shared Wells") as long as the combined capacities of the Trustee's Shared Wells and Well No. 24 is less than 2000 acre feet of water per annum. Catalina presents no evidence that the Well Use Agreement did not satisfy the parties' dispute over the conveyance of additional wells. Therefore, the Trustee, by entering in to the Well Use Agreement, has fully performed the requirements of the Letter Agreement; and Catalina, by the same token, accepted the substituted performance. Therefore, summary judgment in favor of the Trustee is appropriate on the Well Claim, and Catalina has no claim for the value

---

[28] *National Old Line Inc. Co. v. Brown*, 107 N.M. 482, 484, 760 P.2d 775, 777 (1988).

[29] *Gutierrez v. Sundancer Indian Jewelry, Inc.*, 117 N.M. 41, 51, 868 P.2d 1266, 1276 (N.M.App. 1993), citing *Bennett v. Kisluk*, 112 N.M. 221, 223, 814 P.2d 89, 91 (1991) (J. Hartz, dissenting).

[30] *Id.*

of Wells 2, 17, 19 and 32.

        An appropriate Order will be entered.

 

MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Douglas R. Vadnais
Timothy J. DeYoung
Attorneys for Trustee
Bank of America Centre
500 Fourth Street NW, Suite 1000
Albuquerque, NM 87103-2168

Frank Ainsa
Attorney for Catalina
5809 Acacia Circle
El Paso, TX 79912

Leonard Martinez-Metzgar
Asst. United States Trustee
P.O. Box 608
Albuquerque, NM 87103

Daniel J. Behles
Attorney for Debtor
225-A Cynthia Loop, NW