UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   PHYLLIS CROWDER,                                    No. 7-96-10336 ML

Debtor.

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on the Chapter 7 Trustee's Omnibus Objection to Remaining Disputed Claims filed on March 21, 2006 (the "Omnibus Objection")(Docket # 1553) concerning the Trustee's objection to Proof of Claim No. 175 filed on September 12, 2000 by Catalina Development, Inc. ("CDI"), Santa Teresa Country Club, LLC ("STCC") and Mesilla Bolson Properties, LLC ("Mesilla Bolson"), (collectively referred to herein as "Catalina").[1] The remaining portion of Catalina's claim (the "Red Lands Claim") is a claim for the fair market value of two tracts of real property: a 15.002 acre parcel of real property which is part of Parcel 7; and a 2.559 acre parcel identified as Parcel 15 (collectively referred to herein as the "Utility Parcels").

Catalina and the Trustee filed certain stipulations in connection with the Red Lands

---

[1]The Court previously entered a memorandum opinion and Order granting partial summary judgment in favor of the Trustee as to that portion of the claim commonly referred to as the "Well Claim," and issued an order determining the allowed claim of Catalina relating to its "Cash Claim." *See* Memorandum Opinion Re: Motion for Partial Summary Judgment on Omnibus Objection to Claim of Catalina Development, Inc. (Docket # 1715) Order on Trustee's Motion for Partial Summary Judgment on Catalina's Red Lands Claims and Claims Concerning Wells 2, 8, 17, 19 and 32 (Docket # 1716); Order Determining Allowed Claim of Catalina Development, Inc. Relating to its "Cash Claim" (Docket # 1728) and Order Granting, in Part, and Denying, in Part, Catalina Development, Inc.'s Motion to Amend Findings of Fact (Docket # 1739). Catalina appealed the orders determining the allowed Cash Claim to the Bankruptcy Appellate Panel for the Tenth Circuit, and the matter remains unresolved on appeal.

1

Claim in preparation for the final hearing on the Omnibus Objection.[2] Following a trial on the merits, the Court took the matter under advisement. Catalina and the Trustee each filed post-trial briefs and the City filed an unopposed request for leave to file an amicus brief with amicus brief attached. (*See* Docket # 1763, #1764, and #1765).   All parties urge the Court to decide the question of whether the Utility Parcels were properly conveyed to Catalina, or whether the transfer was the result of a mutual or unilateral mistake.

The parties stipulate that the Trustee conveyed the Utility Parcels to Catalina by Warranty Deed on August 8, 2000, and also later conveyed the Utility Parcels by Warranty Deed dated December 2, 2004 to the City of Sunland Park (the "City") in connection with condemnation proceedings initiated by the City in August of 1996 ("Condemnation Action") to obtain the real and personal property used by Santa Teresa Services Company ("STSC") in operating its water and sewer utilities.[3] *See* Stipulations, ¶¶ 11., 18., 20., 21., and 22.  Based on a settlement agreement among Catalina, the Debtor, and Charles Crowder dated June 10, 1996 (the "Letter Agreement"), an order entered by this Court in October of 1999 granting the Trustee's motion to enforce the Letter Agreement (the "October 1999 Order") and an order entered by this Court in August of 2000 to compel closing (the "August 2000 Order"), Catalina asserts that it

---

[2]*See* Stipulations of Fact Regarding Amended Objections of Catalina Development, Inc., Santa Teresa Country Club, LLC and Mesilla Bolson Properties, LLC to Trustee's Omnibus Objections to Red Lands Claims ("Stipulations" - Docket # 1761).

[3]The Special Warranty Deed dated August 8, 2000 identifies Parcel 15 as 2.56 acres out of a certain parcel "situate within Section 24, Township 28 South, **Range 2 East**, New Mexico Principal Meridian . .. " (emphasis added). Catalina Exhibit 9.  The legal description of the property contained in the Warranty Deed dated December 2, 2004 conveying Parcel 15 to the City describes the property as "[a] 2.559 acre tract located in Section 24, T.28S, **R.3E**, N.M.P.M. . . . " (emphasis added).  Catalina Exhibit 29.

2

has a claim against the bankruptcy estate for the fair market value of the Utility Parcels that the Trustee conveyed to the City. The Trustee asserts that the Utility Parcels were included in the parcels conveyed to Catalina in August of 2000 either by mutual mistake or by the Trustee's unilateral mistake, and requests the Court to reform the Letter Agreement and the deed to exclude the Utility Parcels. If there is cause to reform the Letter Agreement and the deed, Catalina would have no monetary claim against the estate. If the Utility Parcels were properly conveyed to Catalina, the Trustee further argues that Catalina's Red Lands Claim should nevertheless be disallowed because Catalina has not offered sufficient evidence of the fair market value of the Utility Parcels.

After consideration of the evidence and testimony, the Court finds that the inclusion of the Utility Parcels among the Red Lands transferred to Catalina under the Letter Agreement was a mutual mistake of fact. The Court will, therefore, reform the Letter Agreement to exclude the Utility Parcels, and void the deed issued by the Trustee as to these two parcels. Because the Utility Parcels were conveyed based on a mutual mistake of fact, Catalina is not entitled to a monetary claim against the estate for the value of the Utility Parcels. Consequently, the Court will sustain the Trustee's Omnibus Objection as to the Red Lands Claim.

## FACTS AND DISCUSSION

The Court will accept all facts contained in the Stipulations as undisputed facts, and incorporates the Stipulations herein as findings of fact for purposes of this Memorandum. Based on the testimony and evidence admitted at the final hearing, the Court makes the following additional findings of fact:

1. Neither the petition for condemnation nor the First Amended Petition for

3

Condemnation filed by the City in the Condemnation Action specifically identify the Utility Parcels by acreage or by metes and bounds description, though the documents reference the assets of STSC devoted to the water and sewer utility owned by STSC to include "land", including "real property with all improvements in fee simple" described as

> [c]ertain pieces and parcels of land and various easements . . . situated within Township 28S, Range 3E, N.M.P.M., Dona Ana County, New Mexico, including but not limited to land in Sections 21, 26, 28 and 29 . . .

Exhibit T-5

2. Neither the Debtor nor Charles Crowder are named as parties in the Condemnation Action.

3. A letter dated May 2, 1997 from counsel for the City to all counsel of record (the "Condemnation Letter") states that "[t]he City is condemning STSC's entire interest in these properties, which may be less than a fee interest, and is **not** condemning any interest held by Charles or Phyllis Crowder in these properties." Exhibit T-4 (emphasis in original). The Condemnation Letter also lists several tracts under the headings "Sewer utility" and "Water utility", including the following:

> Sewer treatment Plant  - description of 15.0 acre parcel; and
> Water well No. 6 and Water Tank Site  - description of 2.56 acre parcel.

Exhibit T-4.

5. The Utility Parcels were among the parcels identified as the Red Lands on a map marked as Exhibit 14 ("Exhibit 14") and used by the parties in connection with the final hearing on September 29, 1999 on the Trustee's motion to enforce the Letter Agreement, which resulted in the entry of the October 1999 Order. Exhibit 14 clearly labels the water sewage treatment facility located within Parcel 7 and a water tower (Well No. 6) located on Parcel 15. No party

4

objected at that time to the inclusion of Parcel 7 or Parcel 15 as part of the Red Lands the Trustee was to convey to Catalina.[4]  Catalina Exhibit 5; Exhibit T-3.

6. Although the testimony at the final hearing held September 29, 1999 on the Trustee's motion to enforce the Letter Agreement that resulted in the October 1999 Order did not focus specifically on the Utility Parcels, the following testimony was offered as part of that final hearing:

>Direct examination of Mr. Charles Crowder by Mr. Dan Behles, counsel for the Debtor:
>
>Q. Was the red land in any way involved in draft 13?
>
>A. Yes. We agreed to convey the red land that Phyllis and I owned, except what is 50 acres west of the tract which is – which is for – which was a pond to be utilized by the utility company and the land at well 6 that is occupied by the utility company.
>
>Q. Do you know who prepared --
>
>A. And also they agreed we would have ten acres of – we argued about that ten acres for the utility, the plants set on that land, and we were discussing our 10, 15, 20 acres.  He wanted to give me ten.  I don't know if we ever resolved that.
>
>Exhibit T-3 p. 20-21.
>
>Direct examination of the Debtor, Ms. Phyllis Crowder, by Mr. Behles:
>
>Q. How did he tell you what comprised the red land?  What did they say the red land was?
>
>A. He told me that it was the, I think it was Mr. Collins told me more it was bits and pieces of land. . . . and I did have pretty lengthy conversations with him about the red land because I told him I never had any way of identifying that land, and I hoped he realized that. . . . . I told him I noticed the water tank and sewer plants and some of the other wells and things could be in that red land, and we had to make sure that we had all of that, but that anything that I

---

[4]The focus of the September 28, 1999 hearing at which Exhibit 14 was used was to correct the mutual mistake of the parties as to the fee simple ownership of Parcels 6, 9, 11, 12, and 20, and not the ownership interest in the Utility Parcels.

5

– and that, that he needed or would be his unless it belonged to someone else or that we needed it for the Services Company, our water rights, like our wells.

>Exhibit T-3, p. 52.

>Cross examination of Mr. Greg Collins by Mr. Behles

>Q. But was Sunland Park seeking to condemn any real estate owned by Mr. Crowder?

>A. I think there was a question at the time that they were trying to, and I think that came out in district court. There was some land underneath the sewage treatment plant. There was also some land underneath the water tank.

>Q. Ultimately the state court determined you had no property interest in the condemnation; is that correct?

>A. I believe so.

>Exhibit T-3, p. 129.

7. A title commitment issued by Southwestern Abstract and Title in July of 2000 reflects that Parcels 7 and 15 were owned in fee simple by the Debtor and Charles Crowder. Catalina Exhibit 41.

8. The August 2000 Order directed the Trustee to convey the Red Lands to Catalina. Parcels 7 and 15 are specifically identified in the August 2000 Order among the parcels of real property to be conveyed to Catalina by the Trustee. Catalina Exhibit 10.

9. The deeds transferring the Utility Parcels to Catalina were prepared based on the 2000 title commitment.

10. In connection with the Condemnation Action, Catalina asserted an ownership interest in Wells 8 and 19 because those wells were located on the Red Lands and were used by Santa Teresa Country Club to irrigate the golf course. The state court denied that claim and the New Mexico Court of Appeals affirmed that ruling. *See* Memorandum Opinion Re Motion for

6

Partial Summary Judgment on Omnibus Objection to Claim of Catalina Development, Inc. ("Partial Summary Judgment Memorandum"), ¶ 18. (Docket # 1715).

11. Catalina did not assert its ownership interest in the Utility Parcels as part of the Condemnation Action until 2003 when it responded to a motion filed in the Condemnation Action to enlarge the stay. *Testimony of Christopher Bauman.*

12. At the final hearing on the Red Lands Claim, Greg Collins, principal of Catalina, testified as follows: a) that he knew there was considerable confusion over ownership of the property in the Santa Teresa area controlled by the Crowders at the time of his initial negotiations with Mr. Crowder; b) that he knew at that time that STSC was a privately owned utility company regulated by the Utility Division of the New Mexico Public Regulation Commission ("PUC"); and c) that Catalina did not want to accept any responsibility for environmental contamination on any property it was to acquire under the Letter Agreement. He also acknowledged that both Charles Crowder and Phyllis Crowder said they wanted to keep the utility assets, but that Mr. Crowder never said he wanted to keep Parcels 7 or 15.

13. At the final hearing on the Red Lands Claim, Mr. Crowder testified about his negotiations with Mr. Collins in 1999 concerning the Red Lands. Mr. Crowder's testimony included the following: a) that at the time of the negotiations with Catalina that resulted in the Letter Agreement he was attempting to dispose of the utility for the highest price; b) that Mr. Collins indicated that Catalina did not want the utility; c) that STSC was a separate entity but that all the land he owned where the utility was located plus any land needed by the utility for its expansion was under the jurisdiction of the PUC; and d) that he believed he was conveying to Catalina unencumbered property that he and Phyllis Crowder owned less any property used by or

7

needed for the expansion of the utility as ordered by the PUC.

> Whether The Inclusion of the Utility Parcels in the Red Lands as Contemplated by the Letter Agreement was a Mutual Mistake of Fact

The Trustee requests the Court to reform the Letter Agreement and the deed based on mutual mistake of fact. The Trustee believes that neither the Debtor or Mr. Crowder on one side of the contract, nor Catalina, represented by Mr. Collins, as the other party to the Letter Agreement, intended that the Utility Parcels be included among the Red Lands to be conveyed to Catalina. Mutual mistake can serve as the basis for reformation of a contract.[5] As explained in the Restatement (Second) of Contracts,

> [w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement . . .

> *Restatement (Second) of Contracts* § 155 (1981).

"For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended." *Cargill v. Sherrod,* 96 N.M. 431, 433, 631 P.2d 726, 728 (1981)(citing *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct. App. 1972)).[6] The party who seeks to reform a contract based on mutual mistake bears the

---

[5] *State ex rel. State Highway and Transp. Dept. v. Garley,* 111 N.M. 383, 388, 806 P.2d 32, 37 (1991)("New Mexico has recognized mutual mistake as a ground for reformation of a contract or other document . . .")(citations omitted); *Twin Forks Ranch, Inc., v. Brooks,* 125 N.M. 674, 677, 964 P.2d 838, 841(Ct.App.1998)(*"Twin Forks II"*)("Mutual mistake is grounds for reformation of a written agreement.")(citing *Kimberly, Inc. v. Hays,* 88 N.M. 140, 143-144, 537 P.2d 1402, 1405-06 (1975)(remaining citation omitted)).

[6] *See also, Garley,* 111 N.M. at 388, 806 P.2d at 37 (a mistake occurs when the parties assume that the contents of the writing expressed their intention when in fact it said something else); *Twin Forks Ranch, Inc. v. Brooks,* 120 N.M. 832, 835, 907 P.2d 1013, 1016 (Ct. App. 1995)(*"Twin Forks I"*), appeal after remand, 125 N.M. 675, 964 P.2d 838 (1998)("A mutual

8

burden of proving the mistake by clear and convincing evidence.[7] In order to reform an agreement based on mutual mistake, not only must the evidence clearly indicate that both parties to the agreement made a mistake, but the evidence must also clearly establish the contents of the agreement the parties intended to make.[8] The terms of the intended agreement must be apparent at the time the parties entered into the contract.[9] In determining whether there was a mutual mistake, "[e]xtrinsic evidence is admissible to establish that [the agreement] did not express the true agreement of the parties, even if the inconsistency cannot be detected on the face of the [agreement] and becomes clear only in light of surrounding circumstances." *Twin Forks I,* 120 N.M. at 835, 907 P.2d at 1016 (citing *Mark V, Inc., v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993)(remaining citations omitted)).

---

mistake occurs when the parties have reached an agreement, but the writing either does not express what was really intended . . . . or has achieved what neither party intended.")(citations omitted).

[7]*Collier v. Sage,* 51 N.M. 147, 150, 180 P.2d 242, 243 (1947)(to prove a right to reform an instrument based on mutual mistake, "the proof must be of the clearest and most satisfactory character."); *Pacheco v. Martinez,* 97 N.M. 37, 43, 636 P.2d 308, 314 (Ct.App. 1981)("Where reformation is sought, the burden of proof upon the party seeking reformation must be sustained by evidence that is satisfactory, clear and convincing.")(citing *Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App. 1970)(remaining citations omitted); *Twin Forks II,* 125 N.M. at 677, 964 P.2d at 841("The party seeking to reform a writing must prove by clear and convincing evidence that a mutual mistake occurred.")(citing *Butler v. Butler,* 80 N.M. 36, 38, 450 P.2d 922, 924 (1969)(remaining citation omitted)).

[8]*See Twin Forks II,* 125 N.M. at 677-78, 964 P.2d at 841-42 ("[B]efore a court may reform a writing, 'the proof must not only establish that the written agreement was not the agreement intended by the parties, but also what was the agreement contemplated by them at the time it was executed . . . '")(quoting 13 Samuel Williston, *A Treatise on the Law of Contracts* § 1548, at 124-25 (3d ed. 1970)(citations and footnotes omitted)).

[9]*Garley,* 111 N.M. at 387, 806 P.2d at 36 ("The comment [to the Restatement] makes it clear that 'the erroneous belief must relate to the facts as they exist at the time of the making of the contract.")(quoting *Restatement (Second) of Contracts* §151, comment a. (1979)).

9

Catalina argues that it was no mistake that the Utility Parcels were included among the Red Lands to be conveyed to Catalina under the Letter Agreement. Mr. Collins testified that he knew the Utility Parcels were owned by the Crowders, individually, and that he expected to receive the Utility Parcels as part of the Red Lands to be conveyed to Catalina according to the Letter Agreement. He steadfastly contends that the inclusion of the Utility Parcels in the Red Lands was not a mutual mistake and not inconsistent with his understanding that he was not acquiring the assets of STSC, which included the water treatment facility and the water tower. In support of this position, Catalina points primarily to the following facts: 1) no one objected at the final hearing on the Trustee's motion to enforce the Letter Agreement to Exhibit 14 which clearly marked Parcels 7 and 15 as part of the Red Lands; 2) the petition filed in the Condemnation Action did not name the Debtor or Mr. Crowder as parties, nor did it specifically identify or include a legal description of Parcel 7 or Parcel 15; and 3) the Condemnation Letter from the City's counsel confirmed that the City was not seeking to condemn property owned by the Debtor and Mr. Crowder individually.

Other surrounding facts and circumstances undermine Catalina's position. First, the testimony from the September 29, 1999 hearing on the motion to enforce the Letter Agreement indicates that Mr. Collins knew there was some question that the City was trying to condemn the land under the sewage treatment plant and the water tank. Testimony of Mr. Crowder and the Debtor from that hearing also indicates that they each discussed with Mr. Collins their intent not to include the Utility Parcels in the property to be conveyed to Catalina as part of the Letter Agreement. And while Mr. Crowder's testimony indicates that an agreement with Catalina as to the exact acreage that was to be retained for use by STSC was not reached, it is clear that both

10

parties understood that the land needed for the operation of STSC was not to be conveyed as part of the Letter Agreement. The Condemnation Action ultimately determined the extent of the acreage needed by STSC, as evidenced by the deeds conveying Utility Parcels (Parcel 15 and a portion of Parcel 7) to the City. *See* Catalina Exhibits 28 and 29.

As noted by this Court in its Partial Summary Judgment Memorandum, Catalina's explanations for its actions regarding the inclusion of the Utility Parcels in the Red Lands identified in Exhibit 14 and for its failure to assert an ownership interest in the Utility Parcels as part of the Condemnation Action ultimately require the Court to assess credibility. Partial Summary Judgement Memorandum, p. 13 (Docket # 1715). Based on the surrounding facts and circumstances, the Court finds that Catalina's explanations are not credible.

Mr. Collins' belief that the Utility Parcels were owned by the Debtor and Mr. Crowder, individually, was not confirmed until the issuance of the title commitment in 2000, well after the Condemnation Action had been initiated in 1996, and after the date of the Condemnation Letter. Furthermore, even though the Condemnation Letter from the City contained a statement that the City did not intend to condemn property owned by Mr. Crowder and the Debtor individually, it nevertheless also specifically identified the water sewage treatment parcel and the water tower parcel among the properties it sought to condemn. Catalina's failure to assert an ownership interest in the Utility Parcels in the Condemnation Action until 2003, despite its intervention in the Condemnation Action and its assertion in the Condemnation Action of ownership interests in certain wells, is best explained by finding that Catalina did not think that it owned the Utility Parcels and that it did not expect to receive them under the Letter Agreement.

As explained in the comment to the Restatement, "[t]he error in expressing the agreement

11

may consist in the omission or erroneous reduction to writing of a term agreed upon or the inclusion of a term not agreed upon." *Restatement (Second) of Contracts* § 155, comment a. (1981). In this case, the testimony of Mr. Crowder and the Debtor clearly show that the inclusion of the Utility Parcels was discussed with Mr. Collins at the time of the negotiations. Mr. Collins knew at the time he negotiated the Letter Agreement that neither Mr. Crowder nor the Debtor intended to transfer the land necessary for the operation of STSC, and that STSC was subject to the rules and regulations of PUC. Catalina's actions subsequent to the Letter Agreement likewise indicate that Catalina did not expect to receive the Utility Parcels. In short, there is convincing evidence that neither party intended or expected the Utility Parcels to be conveyed as part of the Red Lands. The Court will, therefore, conclude that the Utility Parcels were included in the property to be conveyed by the Trustee to Catalina under the Letter Agreement by mutual mistake.

## CONCLUSION

In assessing whether there was a mutual mistake, the Court must focus on the facts and circumstances surrounding the formation of the Letter Agreement.[10] The subsequent actions of the parties may serve to further illuminate what was intended at the outset, but the equitable remedy of reformation is available only when the evidence clearly establishes the intended terms of the agreement.[11] As examined above, at the time of the negotiations, Mr. Collins, the Debtor,

---

[10] *See Garley,* 111 N.M. at 387, 806 P.2d at 36 (the mistake must relate to the facts as of the time of the agreement).

[11] *See Twin Forks I,* 114 N.M. at 781, 845 P.2d at 1235 (extrinsic evidence is admissible to show that the agreement does not embody the terms of the intended agreement); *Twin Forks II,* 125 N.M. at 678, 964 P.2d at 842 (stating that the proof must establish not only that the agreement was not what the parties intended, but the terms of the agreement the parties intended

12

and Mr. Crowder talked about the Debtor and Mr. Crowder's intention not to convey to Catalina the land necessary for the operation of STSC.  At that same time, Catalina expressed no interest in obtaining the utility and wanted to make sure it did not accept any responsibility for any environmental issues associated with any land it was to receive.  The facts in this case are contrary to the facts in *Twin Forks II,* where plaintiff sought to reform a deed to exclude the conveyance of appurtenant water rights based on mutual mistake.  In *Twin Forks II,* the court concluded that reformation based on mutual mistake was not available where the evidence indicated that the parties never discussed or bargained over the issue of water rights during their negotiations, so that it was not appropriate to infer an agreement not to convey appurtenances. *Twin Forks II,* 125 N.M. at 678,  964 P.2d at 842.

Here, the exclusion of the land necessary to the operation of STSC was discussed by the parties, yet the Letter Agreement only referred to the land to be conveyed generally as the Red Lands. *See* Exhibit T-23.  Catalina's continued inaction with respect to the Utility Parcels after it received them supports the conclusion that it never intended to receive the Utility Parcels under the Letter Agreement.  Mr. Collin's explanation for Catalina's inaction is simply not credible given the surrounding facts and circumstances at the time of the Letter Agreement.  The mutual mistake was perpetuated by the Trustee in conveying the Utility Parcels to Catalina.

Based on the foregoing, the Court will grant the Trustee's request for reformation of the Letter Agreement to exclude the Utility Parcels based on mutual mistake.  Catalina is, therefore, not entitled to a claim for the value of the Utility Parcels the Trustee subsequently conveyed to the City through the Condemnation Action.  An appropriate order sustaining the Trustee's

---

to make).

Omnibus Objection to Claims as to Catalina's Red Lands claim will be entered in accordance with this Memorandum Opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: August 29, 2008

COPY TO:

Douglas R. Vadnais
Tim J. DeYoung
Attorneys for Barnard R. Given, Trustee
PO Box 2168
Albuquerque, NM 87103

Francis S. Ainsa, Jr.
Attorney for Catalina Development, Inc.,
Santa Teresa Country Club, LLC and
Mesilla Bolson Properties, LLC
5809 Acacia Circle
El Paso, TX 79912

Christopher P. Bauman
Attorney for Sunland Park as Amicus Curiae
PO Box 30684
Albuquerque, NM 87190